**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Felix Wayne MITCHELL, et al.,**
**Defendants-Appellants.**

**No. 83–1237.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 9, 1984.

Decided July 2, 1984.

■■■

Marcus S. Topel, William M. Goodman, Topel & Goodman, San Francisco, Cal., Robert Lyons, Hayward, Cal., John Gigounas, James Molesky, San Francisco, Cal., Cristina C. Arguedas, Berkeley, Cal., Richard B. Mazer, Gilbert Eisenberg, William Osterhoudt, Hallinan, Berger, Osterhoudt, San Francisco, Cal., for defendants-appellants.

Joseph M. Burton, Charles B. Burch, Asst. U.S. Attys., San Francisco, Cal., for plaintiff-appellee.

Before SNEED and FLETCHER, Circuit Judges, and ENRIGHT,* District Judge.

ENRIGHT, District Judge:

This is an interlocutory appeal from a district court order denying defendants' motion to dismiss the indictment against them for, *inter alia,* violation of the Double Jeopardy clause of the fifth amendment of the Constitution. Defendants are charged in a nineteen-count indictment with conspiracy to distribute heroin and other related offenses. The first trial of the matter ended in a mistrial at defendants' request on July 6, 1983. That request was unopposed by the prosecution and was granted by the trial court, the Honorable William H. Orrick presiding.

Prior to commencement of the second trial, defendants moved to dismiss the indictment on double jeopardy grounds. Judge Stanley A. Weigel heard and denied the motion, 572 F.Supp. 709, on October 4, 1983. This court then granted the government's request that the appeal from Judge Weigel's decision be heard on an expedited basis. We affirm the district court's denial of defendants' motion to dismiss the indictment.

The fifth amendment prohibition against twice putting a person in jeopardy for the same offense protects a criminal defendant's "valued right to have his trial completed by a particular tribunal." *Wade v. Hunter,* 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949). Balanced against defendant's right, however, is the right of society to be protected against those guilty of crimes by enabling society to retry the accused under certain circumstances. *Id.* at 689, 69 S.Ct. at 837. In addressing those competing concerns, the rules that have emerged focus upon whether or not defendant has consented to the declaration of a mistrial.

■ Where the mistrial is declared over the objection of defendant, defendant cannot be retried unless there was "manifest necessity" for the mistrial, *United States v. Perez,* 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165 (1824), the typical example of which is a hung jury, *Oregon v. Kennedy,* 456 U.S. 667, 672, 102 S.Ct. 2083, 2087, 72 L.Ed.2d 416 (1982). The "manifest necessity" exception protects defendant's interest in having his case finally decided by the jury which initially heard the matter by ensuring that the mistrial was indeed required, while also protecting society's interest in obtaining just results by allowing retrial of the defendant where the mistrial declaration was necessary. *Id.* at 672, 102 S.Ct. at 2087.

■ Where defendant consents to a mistrial, on the other hand, the "manifest necessity" doctrine does not come into play and as a general rule retrial is permitted because defendant himself has elected to terminate the proceedings and begin afresh. *Oregon v. Kennedy,* 456 U.S. at 672, 102 S.Ct. at 2087; *United States v. Tateo,* 377 U.S. 463, 467, 84 S.Ct. 1587, 1589, 12 L.Ed.2d 448 (1964). The Supreme

---

* Honorable William B. Enright, United States District Judge for the Southern District of California, sitting by designation.

Court has carved out a narrow exception, however, and held that where governmental conduct, either by judge or by prosecutor, is designed to goad defendant into moving for a mistrial, the Double Jeopardy clause will bar reprosecution despite defendant's consent to the mistrial.[1] *Oregon v. Kennedy*, 456 U.S. at 673, 102 S.Ct. at 2088.

Turning to the specific facts here presented, defendants' primary contention is that certain governmental conduct in this case, while not intended to prod defendants into seeking a mistrial declaration, nonetheless vitiates defendants' consent to the mistrial because it similarly circumscribed defendants' ability to choose one course of conduct over another.

The record indicates that the government was aware that two insiders in the alleged drug conspiracy, Leslie Brigham and Norbert Bluitt, would be used as government witnesses and that the government had made that determination prior to commencement of the initial trial. The government did not disclose the intention to call these insiders, however, in the interest of protecting their safety. The difficulty arises because these two witnesses had previously been represented on criminal charges by the attorney for the lead defendant Mitchell in the present case.

Further complicating the matter, one of the witnesses, Leslie Brigham, had allegedly been visited by defendant Mitchell's attorney, Arlene West, while Brigham was in state custody. On that occasion Brigham contended that Ms. West passed a note written by defendant Mitchell to Brigham, urging Brigham not to testify in the present criminal case.

The substance of this allegation of obstruction of justice by Arlene West came to the attention of the trial judge prior to trial during an *in camera* examination of government agent Steiner's declaration filed in opposition to the release of material witness Leslie Brigham. Defendants were not informed of this *in camera* proceeding and hence did not have knowledge prior to trial of the potential conflict of interest between Arlene West's possible obstructive acts and her ability to fully cross-examine the government's witnesses.

The first government witness to be called when the trial began on June 20, 1983, was Fred Sanders. On cross-examination, Sanders testified that he had not discussed the case prior to trial with the prosecutors. During a recess, defense counsel ascertained from prosecutors that this was not the case; the prosecutors had discussed the case with Sanders at the pretrial stage. Upon resumption of the trial, however, Sanders again denied such a discussion, even despite attempts by the government to refresh his memory on redirect examination.

After this inconsistency was brought to Judge Orrick's attention, he adopted the following procedure for correction of the error. The prosecution made an unsworn statement to the jury estimating as the total time spent discussing the case with Sanders prior to trial as twenty hours. Then defense attorneys were permitted to again cross-examine Sanders; this time he testified that the time spent with prosecutors in pretrial discussions was forty hours. Judge Orrick also indicated he would give the jury strong and emphatic instructions on credibility.

At the conclusion of Sanders' testimony, the government informed the defense that Norman Bluitt, the insider, would be called as a witness. Objecting on the basis of Arlene West's prior representation of Bluitt, defendants moved for a dismissal or for a mistrial and submitted supporting declarations showing that West could significantly impeach Bluitt if she testified, but that much of her testimony would also implicate her present client, Mitchell.

---

1. This exception is necessary to ensure that defendant's right to continue in the same forum does not become a "hollow shell" as it otherwise might could the government with impunity induce defendant's consent to mistrial and then validly retry defendant for the same offense. *See Oregon v. Kennedy,* 456 U.S. at 673, 102 S.Ct. at 2088.

A· few days later, on July 5, 1983, the government revealed its intention to call Leslie Brigham as a witness as well. In response to renewed defense motions to dismiss or for a mistrial, 'the court held separate *in camera* sessions with opposing counsel. At the session with defense counsel, one defense attorney remarked that it was surprising that the government had not even alerted Judge Orrick to the potential conflict.

Following the *in camera* sessions, the court ruled that the trial would go forward with Bluitt's testimony limited so that it would be unnecessary to call West to impeach him. All defendants then joined in a motion for a mistrial which was granted without opposition from the government.

The parties have stipulated to certain facts for purposes of the challenge to re-trial on double jeopardy grounds. Specifically, they agree that Judge Orrick was aware of the conflict between Arlene West's representation of lead defendant Mitchell and her prior connection with Leslie Brigham through the agent's declaration of May 23, 1983. In addition, it is agreed that counsel for the defense was not aware of the conflict until after the trial was underway. Finally, the stipulation provides that defense counsel would not have consented to a mistrial but for their mistaken belief that the government had made no *in camera* disclosure of the West conflict.

Based upon the foregoing, defendants argue that to retry them at this point would be violative of the Double Jeopardy clause. It is defendants' contention that the withholding of the information as to the West conflict until late in the trial by the prosecution with the knowledge of the court is tantamount to "goading" defendants into declaring a mistrial in that the request for a mistrial was made without the benefit of all the relevant information.[2] It is our view, however, that to so hold

would result in a significant expansion of existing precedent, one that is expressly foreclosed by recent Supreme Court pronouncements on the issue.

Defendants rely almost exclusively upon *United States v. Dinitz*, 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976). In *Dinitz*, the trial judge had banished defendant's primary attorney from the trial in its opening stages. At that point, the judge offered defendant three choices as to how to proceed. First, defendant could request a stay pending appellate review of the propriety of the court's exclusion of counsel. Second, defendant could continue with the present trial with his other attorneys assuming the role of trial counsel. Or, third, defendant could move for a mistrial and obtain other counsel. Defendant thereupon moved for a mistrial.

After his motion to dismiss the indictment on double jeopardy grounds was denied, defendant was convicted in a second trial. A divided panel of the Court of Appeals for the Fifth Circuit reversed the conviction, 492 F.2d 53 (5th Cir.1974), and the reversal was affirmed upon rehearing *en banc*, 504 F.2d 854 (5th Cir.1974).

The Supreme Court reversed the Fifth Circuit on appeal by the government, however, and held that defendant was validly retried. In language upon which the present defendant heavily relies, the Court noted that the. three choices presented to the *Dinitz* defendant were sufficient to ensure his consent to the mistrial was valid:

> In such circumstances, the defendant generally does face a "Hobson's choice" between giving up his first jury and continuing a trial tainted by prejudicial judicial or prosecutorial error. The important consideration, for purposes of the Double Jeopardy clause, *is that the defendant retain primary control over the course to be followed* in the event of such error.

---

2. Of critical importance to defendants, they contend, was the fact that the trial judge, Judge Orrick, was aware of the built-in conflict between West's prior representation of two

government witnesses as well as the conflict relating to the obstruction allegation against her prior to trial, but did not reveal this to defendants.

424 U.S. at 609, 96 S.Ct. at 1080 (emphasis added).

Defendants argue that in their trial, unlike the trial in *Dinitz,* they did not "retain primary control" because they lacked essential information, the knowledge that both the trial judge and the prosecutor knew of and failed to disclose the West conflict prior to trial, which was critical to reaching their decision on a mistrial motion. Lacking such information, under defendants' analysis, they lacked control over their choice to request a mistrial.

Defendants' argument is analogous to one based upon the sixth amendment right to counsel which requires that a waiver of defendant's right must be knowing, voluntary and intelligent. *See, e.g., Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). Defendants' theory presumes an entitlement to all information in the possession of the court or opposing counsel which may be important or even relevant to defendants' mistrial calculations. Such is not the law as *Dinitz* itself makes clear.

The Fifth Circuit decision in the *Dinitz* case, in reversing defendant's conviction, transposed the waiver theory into the mistrial analysis:

> Using a defendant's consent to a mistrial to bar his subsequent complaint of double jeopardy implies that he has bound himself to accept an abandonment of the first trial by exercising something more substantial than a Hobson's choice.... Under the circumstances of this case...., he can hardly be said to have relinquished voluntarily his right to proceed before the first jury.

*United States v. Dinitz,* 492 F.2d at 59.

In the opinion reversing the Fifth Circuit, the Supreme Court left no doubt but that it was this waiver theory the Court was rejecting:

> The Court of Appeals viewed the doctrine that permits a retrial following a mistrial sought by the defendant as resting on a waiver theory .... But traditional waiver concepts have little relevance where the defendant must determine whether or not to request or consent to a mistrial in response to judicial or prosecutorial error.

*United States v. Dinitz,* 424 U.S. at 608–09, 96 S.Ct. at 1080 (citations omitted). And, in a footnote:

> The respondent characterizes a defendant's mistrial motion as a waiver of "his right not to be placed twice in jeopardy" and argues that to be valid the waiver must meet the knowing, intelligent, and voluntary standard set forth in *Johnson v. Zerbst,* 304 U.S. 458 [58 S.Ct. 1019, 82 L.Ed. 1461]. This approach erroneously treats the defendant's interest in going forward before the first jury as a constitutional right comparable to the right to counsel .... This Court has implicitly rejected the contention that the permissibility of a retrial following a mistrial or a reversal of a conviction on appeal depends on a knowing, voluntary and intelligent waiver of a constitutional right.

424 U.S. at 609 n. 11, 96 S.Ct. at 1080 n. 11 (citations omitted).

Even more significant is the recent Supreme Court decision which makes clear that there is but one exception to the doctrine that consent by defendant precludes a successful challenge to retrial on double jeopardy grounds, and that that exception is to be narrowly read. *Oregon v. Kennedy,* 456 U.S. at 673–76, 102 S.Ct. at 2088–90. After recognizing that it was giving a limiting reading to previous cases which might have supported a broader interpretation of the circumstances in which governmental misconduct might vitiate a defendant's consent to mistrial, *Id.* at 677–78, 102 S.Ct. at 2090–91, the Court stated:

> We do not by this opinion lay down a flat rule that where a defendant in a criminal trial successfully moves for a mistrial, he may not thereafter invoke the bar of double jeopardy against a second trial. But we do hold that the circumstances under which such a defendant may invoke the bar of double jeopardy in a second effort to try him are limited to those cases in which the conduct giving rise to the successful motion for mistrial was intended to provoke the defendant into moving for a mistrial.

*Oregon v. Kennedy,* 456 U.S. at 679, 102 S.Ct. at 2091.

Nor does defendants' reliance upon *United States v. Martinez,* 667 F.2d 886 (10th Cir.1981), *cert. denied,* 456 U.S. 1008, 102 S.Ct. 2301, 73 L.Ed.2d 1304 (1982) alter this court's conclusion that defendants' waiver theory is unavailing. In *Martinez,* the district court found that the trial judge's conduct of a secret meeting with prosecutors and government witnesses, in which ways of combatting the effects of defense spectators on the trial were discussed, mandated a bar to reprosecution. This was so despite defendant's consent to the mistrial declaration. The court reasoned that defendant's consent to the mistrial was in fact no consent at all "because he was not apprised of facts in connection with it." 667 F.2d at 889. Hence, retrial constituted a double jeopardy violation.

The Tenth Circuit affirmed the district court's determination, but on a different theory than that used by the district court. Instead, the Tenth Circuit relied on the government's inducement of defendant's consent and noted that regardless of whether the test was that negligent or intentional inducement was required to be shown, the conduct at bar was sufficient. 667 F.2d at 890.

Thus, the *Martinez* case, particularly when read in light of *Oregon v. Kennedy,* does not support defendants' waiver rationale; it merely reiterates the traditional view that where prosecutorial or judicial misconduct induces the declaration of a mistrial by defendant, mistrial is barred.

As an alternative position, defendants raise the claim that the government's conduct in this case falls within the narrow exception to the consent doctrine as set forth in *Oregon v. Kennedy.* Defendants' theory is that the prosecution held government witnesses Bluitt and Brigham back intentionally, knowing that to call either to

testify would provoke a mistrial, and ultimately relying upon them to avoid the possibility of an acquittal which resulted after the thorough discrediting of Sanders occurred.

This issue was thoroughly explored in the district court's hearing of defendants' motion to dismiss and Judge Weigel concluded that neither the court nor the prosecution had acted with the intent to induce defendants to declare a mistrial. The district court concluded that the prosecution's concern for the protection of these two witnesses, particularly in light of the *in camera* declaration of Agent Steiner detailing the potential for obstruction in the case, justified the failure to disclose the government's intention to call them as witnesses.

■ The district court's determination that a valid reason existed for concealing the identities of these witnesses finds substantial support in the record. Thus, this court cannot conclude that the decision on this issue was clearly erroneous, the appropriate standard of review, *United States v. Miranda-Parra,* 637 F.2d 610, 613 (9th Cir. 1980); *United States v. Calderon,* 618 F.2d 88, 90 (9th Cir.1980).

■ In sum, while defendants by their mistrial request forfeited the discrediting of Sanders that was presented to the jury in the first trial, a second trial of defendants on the charges of which they are accused most justly strikes the balance between the concerns of the accused in having his case heard in its entirety before a single jury and that of society in convicting the guilty. The needs of society must not be permitted to suffer because of the ever-increasing complexity of conducting a trial involving multiple defendants entangled in a labyrinth of interrelationships that typifies the modern-day narcotics conspiracy.[3] Given the absence of anything beyond sheer speculation supporting defendants' theory of intentional government conduct designed to elicit defendants' consent to a

---

**3.** In this regard, it is noteworthy that the conduct of Judge Orrick that defendants argue is sufficient to vitiate their consent does not depart from accepted trial practice. At the time of the *in camera* viewing of the Steiner Declara-

tion prior to trial, it was not necessarily apparent to the court that the government intended to call the two insider witnesses. The actual witness list submitted by the government listed over 200 names and the case was of considera-

mistrial, and the substantial evidence supporting the trial court's conclusion that the withholding of the witnesses' names was justified, this court finds that the present case does not fall within the narrow exception to the consent category of mistrial cases. The court declines to broaden that exception by imposing upon mistrial consents the stringent standards governing the waiver of constitutional rights such as the right to counsel.

Finding that defendants validly consented to the declaration of the mistrial, there is no need to reach the issue of whether the mistrial was required by "manifest injustice." The order of the district court denying defendants' motion to dismiss the indictment is affirmed. The case is remanded for retrial.

ble complexity. Further, even if he had been alerted to the potential conflict by the declaration, the judge's choices were circumscribed by the exigencies created by the potential for obstruction should the contents of the declaration have been revealed to the defense prior to trial. It was only with the benefit of hindsight, as actual events of the trial unfolded, that the damaging effects of this dual representation problem became evident; at that time the trial court offered defendants what were realistic and acceptable choices under the circumstances.

In light of the stipulation between the parties, however, that Judge Orrick was fully aware of the conflict prior to trial, this court has assumed for purposes of the decision that the judge did have knowledge as stipulated.