**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Jerry T. MELTON, Defendant-Appellant.**

**No. 82–8307**
**Non-Argument Calendar.**

United States Court of Appeals, Eleventh Circuit.

Aug. 21, 1984.

Gort, Hassett & Shannon, Frank J. Shannon, III, Atlanta, Ga. (court-appointed), for Melton.

Richard W. Hendrix, Asst. U.S. Atty., Atlanta, Ga.; for plaintiff-appellee.

Before HILL, JOHNSON and HENDER-SON, Circuit Judges.

JAMES C. HILL, Circuit Judge:

Jerry T. Melton was tried in the district court and convicted on one count of conspiracy, 18 U.S.C. § 371, and seven counts of wire fraud, 18 U.S.C. § 1343. The evidence at trial showed that Melton contacted by telephone a large number of persons who had advertised expensive automobiles for sale in local newspapers. Melton informed the persons that he owned a precious gem collection and that he wished to barter gems for their cars. Melton offered various rationales to support his offers: that he wanted to obtain a car for his son, that he needed cash, or that he wished to consummate the transaction by barter for tax reasons. The government produced evidence at trial demonstrating that the "gems" offered by Melton (and accepted by some persons) in exchange for the cars were worthless and that Melton and several other persons had planned the scheme in order to obtain the cars by fraud. Melton appeals to this court, requesting that we set aside his conviction on various grounds including insufficiency of the evidence. We affirm.

I

Melton first argues that the evidence produced at the district court was

insufficient to prove his guilt beyond a reasonable doubt. When reviewing the sufficiency of the government's evidence, this court must sustain the defendant's conviction if we conclude that a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt. *United States v. Bell,* 678 F.2d 547, 549 (5th Cir. Unit B) (en banc), *aff'd on other grounds,* 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1982). In applying this standard, "we view the evidence in the light most favorable to the government, with all reasonable inferences and credibility choices read in support of the jury's verdict." *United States v. Aguiar,* 610 F.2d 1296, 1303 (5th Cir.1980) (citing *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942)). Under this standard, we hold that the jury could properly find Melton guilty on the basis of the evidence presented at trial.

▉ Melton primarily argues that the government failed to prove that he misrepresented the price of the gems he offered for trade. Melton asserts that he advised all purchasers to rely on an expert appraiser and notes that one collection of gems, which he traded for a Mercedes, was valued by a jeweler at $68,488. It is true that Melton introduced evidence supporting his argument at trial; however, the government introduced other evidence that incriminated Melton. The government's appraiser testified that the gems were worth no more than $100.

Furthermore, the government introduced at trial direct evidence showing Melton's intent to defraud and his knowledge that the gems were worth much less than their represented value. The FBI arrested Melton in April, 1981, in Washington, D.C. on the basis of a complaint charging him with bankruptcy fraud. The FBI took possession of an attache case that Melton had with him when he was arrested. The FBI obtained a search warrant to search the case and discovered several tape recorded cassettes of telephone conversations between Melton and his coconspirators. (Melton had taped all the conversations himself without the knowledge of the third parties.) The tapes, which were introduced into evidence, reveal that one of Melton's coconspirators, Von Ende, agreed to supply Melton with low quality gemstones accompanied by appraisals certifying them to be worth thirty to fifty times their cost in exchange for a share of the profits that would be realized when Melton disposed of the gems. (The government's expert witnesses testified that the acceptable retail markup on gemstones is two to three times cost.) Given both the testimony that the gems were, in fact, worthless and the tape recordings from which the jury could readily infer that Melton intended to defraud the prospective gem purchasers, it is clear that there is sufficient evidence to support Melton's conviction.

## II

▉ At trial, Von Ende, the coconspirator referred to above, testified for the government. At the conclusion of his testimony, to support his credibility and to blunt the impact of cross-examination, the government elicited from Von Ende testimony revealing that he had pled guilty himself and that, in exchange for his plea, charges against his wife had been dismissed. Melton argues that it was improper for the trial judge to deny his motion for a mistrial based on the admission of this evidence. *See United States v. Vaughn,* 546 F.2d 47 (5th Cir.1977) (should not advise jury of codefendant's guilty plea). Although it is true that a codefendant's guilty plea cannot be admitted as evidence of the defendant's guilt, it can be admitted for other, proper purposes. This case is factually similar to *United States v. Veltre,* 591 F.2d 347 (5th Cir.1979). In that case, the government also informed the jury that the codefendant, who testified at trial, had pled guilty to the crime. The court stated:

Defense counsel's expected defense on this theory was merely brought out in advance by the government to blunt adverse impact on the jury and to minimize the impression that the government was

trying to conceal Ms. Leone's guilty plea. Where, as here, the codefendant is a witness at trial, subject to the rigors of cross-examination, disclosure of the guilty plea to blunt the impact of attacks on her credibility serves a legitimate purpose and is permissible.

*Id.* at 349; *see also United States v. Edwards*, 716 F.2d 822, 825 (11th Cir.1983). Furthermore, in this case, the trial judge cautioned the jury that the guilty plea could not be used as substantive evidence of Melton's guilt, *see Edwards*, 716 F.2d at 825–26, and the record demonstrates that the government did not unduly emphasize the plea during closing argument, *see Veltre*, 591 F.2d at 349 (use of similar evidence during opening arguments).

### III

■ At trial, Melton testified in his own behalf. In rebuttal, the government produced five witnesses who testified that they were familiar with Melton's reputation for truthfulness and honesty and that they would not believe Melton under oath. Melton contends that the trial court should not have allowed the government to use the testimony of five witnesses. We reject this contention. By choosing to testify, Melton placed his credibility in issue as does any other witness. *United States v. Darland*, 626 F.2d 1235 (5th Cir.1980). Thus, the government could properly demonstrate that Melton's credibility was suspect. *See generally United States v. Thomas*, 676 F.2d 531 (11th Cir.1982). Melton's contention that it was unduly prejudicial to allow as many as five rebuttal witnesses to testify is governed by Rule 403 of the Federal Rules of Evidence. Thus, we will reverse Melton's conviction only upon a showing of abuse of discretion by the trial judge. We perceive no abuse in this case; indeed, if Melton was able to convince individuals to trade expensive cars for worthless gems, the trial judge could well have concluded that the government should be allowed to call five witnesses to counteract any effect Melton's obviously believable personality might have on the jury.

### IV

Melton next argues that the trial court's jury instructions on the conspiracy charge, although correctly stating the law, were unduly prejudicial. Melton contends that the wording of the charge indicated that it was the court's belief that Melton was guilty. The contention is without merit.

### V

Melton's final contention is that the trial court erred by failing to grant his motion for a mistrial based upon prosecutorial misconduct. Codefendant Jeff Dyer entered a guilty plea prior to the commencement of the trial. In anticipation of Dyer's possible appearance as a government witness, Melton issued a writ of habeas corpus *ad testificandum* for prison inmate John Shellburg. According to an affidavit signed by Shellburg, he had witnessed Dyer steal drugs in prison and had overheard Dyer state that he would commit perjury to see Melton convicted. The affidavit also recited information concerning an alleged death threat made by Dyer to Melton in Shellburg's presence. Upon investigation, the government discovered that Shellburg did not prepare the affidavit and that he could not even read all of it. Shellburg testified during a hearing outside the jury's presence that Melton had written the affidavit himself. Melton's basis for his motion for a mistrial was that the government investigated the matter in a heavy-handed way and, during the investigation, informed Shellburg that they believed that his letter and statements were made in return for legal favors from Melton's counsel. On appeal, Melton argues that the trial judge should have granted a mistrial to reprimand the government and to avoid discouraging lawyers from accepting positions as appointed counsel.

■ The decision whether or not to grant a mistrial is within the sound discretion of the trial court. *United States v. Brooks*, 670 F.2d 148 (11th Cir.1982), *cert. denied*, 457 U.S. 1124, 102 S.Ct. 2943, 73 L.Ed.2d 1339 (1982). In this case, the jury

did not hear any prejudicial evidence: Melton's contentions on appeal are based entirely on the government's investigation. In such a case, it is well within the discretion of the trial judge to deny a motion for a mistrial. We are mindful that service as appointed counsel may, in many circumstances, be an onerous and thankless duty; the courts are always appreciative of the efforts put forth by attorneys rendering such services. Nevertheless, given the falsification of the affidavit in this case and the lack of prejudice to Melton, the trial judge acted properly.

The judgment of the district court is AFFIRMED.