**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Michael COUNTRYMAN, Defendant-Appellant.**

**No. 84–3576**
**Non-Argument Calendar.**

United States Court of Appeals, Eleventh Circuit.

April 19, 1985.

B. Dawn Wiggins, Pensacola, Fla., for defendant-appellant.

Susan Novotny, Asst. U.S. Atty., Pensacola, Fla., for plaintiff-appellee.

Before TJOFLAT, HILL and ANDERSON, Circuit Judges.

JAMES C. HILL, Circuit Judge:

Appellant Michael Countryman appeals from his convictions for possession with intent to distribute cocaine, distribution of cocaine, and conspiracy to possess with intent to distribute cocaine. We affirm the convictions, but remand for resentencing.

On January 12, 1984, Art James was arrested for selling three-quarters of an ounce of cocaine to an undercover agent. James cooperated with authorities and named his supplier, Kenny Nall. Both James and Nall pled guilty to charges arising out of these transactions. At appellant's trial, Nall testified that appellant had supplied the cocaine which Nall subsequently sold to James. Countryman's roommate testified that on January 12, Nall and a person named Jose (appellant's apparent supplier) came to their apartment. Countryman met with Jose in the living room, then joined Nall in a bedroom. ·The

roommate testified that he saw cocaine laying out on a mirror on a dresser in the bedroom, saw the appellant and Nall take a little bit out of the cocaine with a card or razor blade, saw a baggie laying near the cocaine, and later saw Nall leave the apartment with the baggie of cocaine. Countryman was convicted on all three counts and sentenced to ten years imprisonment. This appeal followed.

## DISCUSSION

### A. *Motion for Acquittal after Mistrial.*

On May 21, 1984, a jury was selected and sworn for appellant's trial, which was to be tried later in the week. Later that day, juries were selected from the same jury venire for two other criminal trials. Due to a shortage of potential jurors, there was some overlap of jurors between the juries selected. Out of the jury selected for appellant's case, four jurors were also selected to serve on a case involving interstate transportation of stolen goods, which was being prosecuted by the same attorney prosecuting appellant's case; and two jurors were selected to serve on a drug conspiracy prosecution. Faced with the interim jury service problem discussed in *United States v. Mobley,* 656 F.2d 988, 989 (5th Cir. Unit B 1981), the trial judge presented appellant's counsel with three options: to try the case with the chosen jury of fourteen (twelve jurors and two alternates) while waiving appellant's right to be free of jurors having served on juries in similar cases in the interim since jury selection; to try the case with the chosen jury of twelve, after excusing for cause the two overlapping jurors who were to serve on the interim drug case; or to move for a mistrial and continue the case until a later date, at which time a new jury would be selected. Counsel selected the last option, and the judge declared a mistrial and continued the case until July 9, 1984.

Prior to trial, appellant filed a motion for dismissal of the indictment and judgment of acquittal, contending that the "forced mistrial" should be considered a trial on the merits, and that any retrial would violate the double jeopardy clause of the fifth amendment. This motion was properly denied by the district judge. A defendant's request for a mistrial ordinarily removes any barrier to reprosecution, even if the request was necessitated by prosecutorial or judicial error, as long as the defendant retained primary control over the course to be followed in the event of such error. *United States v. Dinitz,* 424 U.S. 600, 607–09, 96 S.Ct. 1075, 1079–80, 47 L.Ed.2d 267 (1976). The defendant retained primary control in the present case. There is no contention of any bad faith action taken by the prosecutor or judge to goad the defendant into requesting the mistrial.

### B. *Testimony as to Co-conspirator's Guilty Plea.*

Appellant was charged with conspiring with unnamed individuals. In presenting its witnesses at trial, the government elicited from James that he had pled guilty to conspiracy to possess with intent to distribute cocaine arising out of a January 12th transaction, and from Nall that he had pled guilty to distribution of cocaine. Appellant contends that this was reversible error. However, it is permissible for the government to disclose guilty pleas of co-conspirator government witnesses in order to blunt the impact of expected attacks on the witnesses' credibility. *United States v. Melton,* 739 F.2d 576, 578–79 (11th Cir.1984). Therefore, the admission of the fact of the pleas during direct examination is not error.

However, this does not end our inquiry. When evidence has been admitted for one purpose, but not others, counsel's subsequent use of that evidence must remain consistent with the grounds upon which the evidence was accepted by the trial judge. It is not proper to persuade a trial judge that the evidence should be accepted for a limited purpose, and, subsequently, capitalize on its admission by urging its misapplication by the jury.

In evaluating counsel's use of such evidence, it is often helpful to refer to the transcript of closing arguments to see if the attorney has abandoned the limited use of the evidence. In the present case, there is some indication that the prosecutor intended to persuade the jury to misuse the evidence of the codefendant's plea of guilt by considering it as evidence of appellant's guilt. This would have been improper. *See Melton*, 739 F.2d at 578. The trial judge promptly put a stop to that before it had reached fulfillment, and immediately instructed the jury not to consider the plea as any proof of the defendant's guilt.

Here, the misuse, had it gone uncorrected, would have had only slight prejudicial effect. The witness admitted, on the stand, to having done all that would make him guilty. While his having pled guilty could not be used against the defendant, his testimony to the same effect could. At least in this case, the prosecutor did not add substantially to his proof of the defendant's guilt by revealing that his co-conspirator witness had entered a guilty plea. The trial judge's prompt cautionary instruction was sufficient to cure any prejudice that might have resulted from the interrupted venture of the prosecutor into misuse.

Although any error in this case was not reversible, counsel is not commended. All trial attorneys should know that when the court admits evidence for a limited purpose, the admission comes with the unspoken admonition, "see that you do not attempt to use this evidence for anything beyond the purpose for which it has been admitted."

## C. *Court's Comment on Defendant's Status as a Witness.*

Prior to the testimony of the second witness for the defense, the prosecutor requested the sequestration of the other defense witnesses. The court stated to defense counsel, "She wants to know if you have another witness you're going to present, other than this witness, or perhaps the defendant." Counsel moved for a mistrial, claiming that this constituted an impermissible comment on the defendant's silence. The motion was properly denied. The test for determining whether a statement made in court is a comment on the failure of a defendant to testify is whether the statement was either "manifestly intended or was of such character that a jury would rationally and necessarily take it to be a comment on the failure of the accused to testify." *United States v. Berkowitz*, 662 F.2d 1127, 1136 (5th Cir. Unit B 1981). The harmless comment made in the present case certainly does not fall within this category.

## D. *Jury Instructions.*

Count II charged the appellant with possession with the intent to distribute cocaine. Appellant attacks the court's failure to instruct the jury on the lesser included offense of simple possession. However, the facts of this case did not entitle appellant to an instruction on the lesser offense, since the facts clearly show the distribution of cocaine from Countryman to Nall. *See United States v. Pirolli*, 742 F.2d 1382, 1387 (11th Cir.1984).

Appellant also alleges error in the failure of the trial judge to instruct that D-cocaine is not prohibited by Schedule II, 21 U.S.C. § 812. The judge instructed that in order to convict Countryman, the jury would have to find beyond a reasonable doubt that the substance tested by the government was either a derivative of coca leaves, or chemically equivalent or identical to such a derivative. This was entirely appropriate based on the evidence presented and on the language of Schedule II(a)(4), 21 U.S.C. § 812(c).[1]

---

**1.** One of the controlled substances prohibited by 21 U.S.C. § 841(a) is:

Coca leaves and any salt, compound, derivative, or preparation thereof which is chemically equivalent or identical with any of these substances, except that the substances shall not include decocainized coca leaves or extraction of coca leaves, which extractions do not contain cocaine or ecgonine.

21 U.S.C. § 812(c), Schedule II(a)(4).

### E. *Sentencing.*

At the sentencing hearing, appellant requested "treatment as a youthful offender." The district judge stated his belief that the appellant required incarceration in a controlled environment because of his drug problems and the seriousness of the offense. Appellant was then sentenced to ten years concurrent imprisonment on each count, with a minimum term of two years after which appellant would be eligible for parole.

Appellant first contends that it was improper to impose separate sentences for the possession and distribution charges, since both charges arose out of the same single transaction. We disagree. The evidence sufficiently established possession of the cocaine by Countryman independent from the actual distribution to Nall, which permits the imposition of separate sentences. *United States v. Berkowitz,* 662 F.2d at 1140–42; *compare United States v. Hernandez,* 591 F.2d 1019 (5th Cir.1979) (en banc) (no separate sentences when convictions for possession and distribution both based on the same act of distribution).

However, we must remand for resentencing on a different issue. When a defendant requests sentencing under the Federal Youth Corrections Act, 18 U.S.C. § 5005 *et seq.,* section 5010(d) requires an express finding that the defendant would not benefit from sentencing under the Act before alternative sentencing routes are pursued. *Dorszynski v. United States,* 418 U.S. 424, 425, 444, 94 S.Ct. 3042, 3044, 3053, 41 L.Ed.2d 855 (1974); *see United States v. Duran,* 687 F.2d 348 (11th Cir. 1982). This finding was not made here.[2]

Therefore, the appellant's convictions are AFFIRMED, but we VACATE the sen- tences imposed and REMAND for resentencing.

---

**2.** The Youth Corrections Act (YCA) has been repealed by The Comprehensive Crime Control Act of 1984, Pub.L. 98–473, Title II, § 218(a)(8), 98 Stat. 1837, 2027 (1984). This repeal is effective October 12, 1984. *Id.* at § 235(a)(1)(A), 98 Stat. at 2031. However, the repeal of the YCA is an *ex post facto* law to the extent that it precludes a court from considering the YCA in sentencing a youth offender who committed an offense prior to the repeal of the Act. *United States v. Romero,* 596 F.Supp. 446 (D.N.M.1984). Therefore, in resentencing the appellant the district court may still consider sentencing him under the Youth Corrections Act; and it must expressly make the "no benefit" finding required by section 5010(d) in order to sentence him outside of the Act.