STATE

v.

David N. GORDON, Jr.

No. 84–101–C.A.

Supreme Court of Rhode Island.

May 14, 1986.

**1340**

Arlene Violet, Atty. Gen., Annie Goldberg, Thomas Dickinson, Sp. Asst. Attys. Gen., for plaintiff.

William T. Murphy, Providence, for defendant.

## OPINION

MURRAY, Justice.

This is an appeal by the defendant, David N. Gordon, Jr., from Superior Court convic-

tions, following retrial, of conspiracy to commit arson and of first-degree arson.[1] We affirm.

In the early morning hours of June 22, 1981, Turilli's Furniture Company located at 400 Warwick Avenue in the city of Warwick was destroyed by a fire of suspicious origin. On that date, at approximately 3:30 a.m., Frank A. Iannuccilli was waiting on the opposite side of Warwick Avenue, approximately 1,200 feet from Turilli's Furniture, for a newspaper delivery. Mr. Iannuccilli's attention was drawn to the Turilli building by the sound of breaking glass. He observed a person run from the building, across Warwick Avenue, and toward Sachem Street. Mr. Iannuccilli then located Warwick police officer David Bastien and reported his observations.

Officer Bastien, who had been sitting in his police cruiser in a parking lot at 613 Warwick Avenue, proceeded toward Turilli's. At the furniture store, he directed the beam from his cruiser's spotlight across the front of the building but did not observe anything unusual. Officer Bastien then proceeded to the intersection of Warwick Avenue and Sachem Street, at which time he observed a man running in a southerly direction along Sachem Street next to a fence. The officer pursued the subject, without success, into a wooded area. He observed that a 1974 blue Cadillac automobile was parked, unattended, next to the wooded area and directly across the street from 79 Sachem Street.

Shortly thereafter, Officer Bastien heard a sizzling sound and observed black smoke coming from Turilli's. After summoning fire apparatus, the officer continued his search for the suspect. A pair of blue canvas shoes was found near the fence. A pair of tan work gloves was discovered on the macadam near the Cadillac. An odor of accelerant was detected in the back seat of the vehicle. A fingerprint found on the

car's passenger door was identified as defendant's. Fingerprints belonging to an alleged accomplice and coconspirator, John Rineer, were found on a cigarette package located inside the vehicle.[2]

In a search of the automobile, police recovered a Veterans Administration outpatient medical-treatment information card bearing the name M.A. Turilli. The card was later identified as belonging to the furniture store's owner, Michael Turilli. At trial, the card was admitted into evidence without objection. Over defendant's objections, both Mr. Turilli and his wife, Sylvia, testified that the card had been stolen in a housebreak several months prior to the fire.

In the early afternoon of June 22, Debra DesRoches, the owner of the Cadillac, and Linda Dowding, the defendant's sister, arrived at the fire scene. Ms. DesRoches, who was defendant's girl friend, approached a police officer and inquired about the location of her automobile, which had been impounded. In response to questioning by police, both women initially stated that the vehicle had been left, disabled, on Sachem Street. Ms. DesRoches purportedly had been operating the vehicle on Warwick Avenue in the early morning of June 22 when it began to stall. She stated that she then turned onto Sachem Street, at which time the vehicle stalled and could not be restarted. Both women told police officers that Ms. DesRoches then telephoned Ms. Dowding, who dispatched her boyfriend, John Rineer, to Sachem Street. Supposedly, he too attempted unsuccessfully to restart the vehicle.

Ms. DesRoches told police that she telephoned Ms. Dowding at approximately 2 to 2:30 a.m. However, Ms. Dowding stated that she received the phone call at approximately 1 a.m. Further, the statements were inconsistent with the account given by a resident of 79 Sachem Street, Donna

---

1. The defendant's first trial on the charges ended in mistrial.

2. A four-count indictment charging, inter alia, first-degree arson and conspiracy to commit arson was ultimately returned against defendant and Rineer.

Sosnicki Duchesneau, who had been sitting on her front porch, facing Sachem Street, for approximately an hour and a half during the time in question. Ms. Duchesneau stated that the Cadillac was not there at 3:20 a.m., at which time she went inside her house. It was not until 3:50 a.m., when she went outside after hearing an explosion, presumably from Turilli's, that she saw the vehicle, which was then parked directly across the street from her home.

While being questioned by police, Ms. Dowding consented to a search of her apartment, located at 34 Marietta Street in Providence. At approximately 5:30 p.m., she and Ms. DesRoches accompanied police officers to the apartment. In the ensuing search, police discovered a note written by defendant to Ms. DesRoches. The letter had been lying on a coffee table in the living room. The document was shown to Ms. DesRoches, who read it and began to cry. Over defendant's objections, the note was introduced into evidence at trial. The letter, as read to the jury by Ms. DesRoches, was as follows: "Debbie, love you with all my heart and I need you so much. Never leave me, okay. If we can do without it in jail, we can do without it on the street. I love you. David."[3]

Shortly after the note was discovered, Ms. Dowding admitted that her statement regarding the Cadillac's disablement was false. She then gave police a written account of the events of June 21 and 22, 1981. Ms. Dowding stated that on the evening of June 21, she and Rineer were joined at her apartment by defendant and Ms. DesRoches. Ms. Dowding retired at approximately 12:30 a.m. However, she awakened at approximately 3 a.m., at which time she discovered that both Gordon and Rineer were absent from the apartment. After being informed by Ms.

DesRoches that the two men had gone to buy cigarettes, Ms. Dowding returned to bed.

When Ms. Dowding awoke again, at approximately 7:30 a.m., only defendant and Ms. DesRoches were in the apartment. When Ms. Dowding inquired into Rineer's whereabouts, Gordon replied that he was in Warwick, near Turilli's, and that he would telephone her. Gordon admitted that he and Rineer had set a fire at Turilli's.[4] The defendant added that he had intended to start only a small fire, hoping to lure the Turilli family to the fire scene so that he could burglarize their residence.

At trial, Inspector John Chappell of the Warwick Fire Department, having been qualified as an expert in the causes and origins of fires, testified that, in his opinion, the fire had been intentionally set.

Michael Alba and his son, Richard, testified that defendant had arrived at their Cranston home at approximately 6:30 a.m. on the date in question. Gordon, who was an acquaintance of Richard's, asked Richard for a ride. The defendant told Richard that his car had broken down, either in Warwick or on Warwick Avenue. Richard Alba could not recall which location Gordon mentioned. Richard drove defendant to Providence. He recalled that Gordon was wearing socks but no shoes.

At trial, Debra DesRoches, testifying under a grant of immunity from prosecution, recanted her statement concerning the alleged disablement of the Cadillac. Ms. DesRoches testified that at approximately 12 to 1 a.m. on June 22, after Ms. Dowding had gone to bed, she was lying on the couch in the Marietta Street apartment when she overheard a portion of a conversation between defendant and Rineer. She heard one man say, "Let's do it," and the

---

3. The actual text of the note is as follows:
"DEB I love you with all my hart I nide you so much. Never leve me o.k. if I can do weth out it in jail Ue can do weth out it on the street
I Love you
David XOXOXO"

4. In her written statement dated June 22, 1981, Ms. Dowding quoted defendant as stating that "we [defendant and Rineer] lit a fire." At trial, however, Ms. Dowding testified that defendant told her that *he* had set a fire.

other respond, "Okay." Thereafter, Ms. DesRoches fell asleep.

When Ms. DesRoches awoke later that morning, only defendant and Ms. Dowding were in the apartment and Ms. Dowding was demanding to be informed of Rineer's whereabouts. Ms. DesRoches observed that, although defendant had been wearing canvas shoes during the previous evening, he was now wearing only socks. She identified a photograph of one of the blue canvas shoes found at the fire scene as resembling the shoes that she had seen Gordon wearing on the evening of June 21.

At the conclusion of the state's presentment of its case, defendant moved for a judgment of acquittal. Addressing each count of the four-count indictment, the trial justice granted a judgment of acquittal on count 1, which charged that defendant entered the Turilli furniture building in the nighttime with intent to commit first-degree arson therein, in violation of G.L. 1956 (1981 Reenactment) § 11–8–5.

Count 2 of the indictment charged that defendant "did knowingly cause, procure, aid, counsel, and create by means of fire," damage to the building owned, occupied, and used by the furniture company, in violation of § 11–4–2. The court granted a judgment of aquittal only in regard to that portion of the count which charged Gordon with procuring, aiding, and counseling. The defendant's motion for judgment of acquittal was denied as to that portion of count 2 which charged that he knowingly caused and created by means of fire damage to the furniture company's building.

The trial justice denied defendant's motion for judgment of acquittal on counts 3 and 4, which respectively, charged that defendant and Rineer conspired to commit first-degree arson, in violation of § 11–1–6, and that they conspired to enter a building with intent to commit first-degree arson.

A jury verdict against defendant was subsequently returned on the three remaining counts. After determining that there was sufficient evidence to support the jury's verdict of guilty on each count, the trial justice denied defendant's motion for a new trial. However, the court found that counts 3 and 4 (the conspiracy charges) in essence charged the same offense. Accordingly, the trial justice concluded that count 4 was merged into count 3.

The defendant was sentenced to fifty years' imprisonment on count 2, the first-degree arson conviction, and ten years' imprisonment on the conspiracy conviction, count 3. The sentences imposed were to be served consecutively.

On appeal, defendant raises several issues, each of which will be addressed separately.

I

*Whether the Trial Justice Erred in Failing to Dismiss the Indictment After the First Trial Ended in a Mistrial.*

During the course of Gordon's first trial on the arson and conspiracy charges, it became evident that the prosecution had failed to disclose certain exculpatory evidence to defendant.

Shortly after the fire, the Warwick police department sent the canvas shoes found near the fire scene to the Federal Bureau of Investigation for analysis. Tests conducted to detect the presence of flammable substances yielded negative results.[5] However, neither the fact that the shoes had been sent to the FBI for analysis nor the results thereof were disclosed to defense counsel. Defense counsel did not become aware of the FBI examination until during the course of the first trial.

Immediately after learning of the nondisclosure, defendant moved to dismiss the indictment. The trial justice denied the motion but granted defendant's motion for a mistrial. In so doing, the court, accept-

---

5. Subsequently, the Warwick police department sent the shoes to the University of Rhode Island's crime lab. The lab's analysis revealed the presence of gasoline. The crime lab's findings were disclosed to defense counsel prior to trial.

ing the prosecutor's assertion that he too was unaware of the results of the FBI analysis, stated that it was satisfied that the prosecution had not deliberately withheld the information.

Prior to the impaneling of a jury for retrial, defendant again moved to dismiss the indictment. Gordon argued that retrial would be violative of the double-jeopardy clause of the Fifth Amendment to the United States Constitution. The trial justice denied the motion. The court emphasized that the mistrial had been granted at defendant's request and that such motion was not precipitated by any bad faith or intentional conduct on the part of the prosecution.

On appeal defendant contends that he was forced to seek a mistrial as a result of intentional prosecutorial misconduct and that therefore the double-jeopardy clause operates to bar retrial.

■ The double-jeopardy clause protects a defendant from multiple prosecutions for the same offense.[6] *Oregon v. Kennedy,* 456 U.S. 667, 671, 102 S.Ct. 2083, 2087, 72 L.Ed.2d 416, 422 (1982); *United States v. Dinitz,* 424 U.S. 600, 606, 96 S.Ct. 1075, 1079, 47 L.Ed.2d 267, 273 (1976). This protection affords a criminal defendant the right to have his trial completed by a particular tribunal. *Oregon v. Kennedy,* 456 U.S. at 671–72, 102 S.Ct. at 2087, 72 L.Ed.2d at 422; *Wade v. Hunter,* 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974, 978 (1949); *United States v. Mitchell,* 736 F.2d 1299, 1300 (9th Cir. 1984); *State v. Sundel,* 460 A.2d 939, 942 (R.I. 1983). Thus, when a trial is terminated over a defendant's objection, retrial is barred unless the mistrial was the result of "manifest necessity." *Oregon v. Kennedy,* 456 U.S. at 672, 102 S.Ct. at 2087, 72 L.Ed.2d at 422; *State v. Sundel,* 460 A.2d at 942.

■ However, when, as in the instant case, a defendant elects to terminate the proceedings and a mistrial is declared at his request, the manifest-necessity standard is inapplicable. Ordinarily, in such a situation the double-jeopardy clause is not a bar to retrial. *Oregon v. Kennedy,* 456 U.S. at 672, 102 S.Ct. at 2088, 72 L.Ed.2d at 422; *United States v. Dinitz,* 424 U.S. at 607, 96 S.Ct. at 1079–80, 47 L.Ed.2d at 273–74; *State v. Sundel,* 460 A.2d at 942. However, there exists a narrow exception to this general rule.

■ The double-jeopardy clause will operate to bar retrial where a defendant's motion for a mistrial was the result of governmental action *intended* to provoke a mistrial request. *Oregon v. Kennedy,* 456 U.S. at 673, 102 S.Ct. at 2088, 72 L.Ed.2d at 423; *United States v. Dinitz,* 424 U.S. at 611, 96 S.Ct. at 1081, 47 L.Ed.2d at 276; *United States v. Mitchell,* 736 F.2d at 1300–01. Such actions include bad-faith conduct designed to afford the prosecution a more favorable opportunity to convict the defendant. *United States v. Dinitz,* 424 U.S. at 611, 96 S.Ct. at 1081, 47 L.Ed.2d at 276; *Downum v. United States,* 372 U.S. 734, 736, 83 S.Ct. 1033, 1034, 10 L.Ed.2d 100, 102–03 (1963). "In such a case, the defendant's valued right to complete his trial before the first jury would be a hollow shell if the inevitable motion for mistrial were held to prevent a later invocation of the bar of double jeopardy in all circumstances." *Oregon v. Kennedy,* 456 U.S. at 673, 102 S.Ct. at 2088, 72 L.Ed.2d at 423.

■ Prosecutorial conduct not rising to the level of intentional bad-faith action designed to goad the defendant into seeking a mistrial is outside this narrow exception. Thus, mere prosecutorial error, although it may necessitate a mistrial, will not operate to preclude retrial. *Id.* at 675–76, 102 S.Ct. at 2089, 72 L.Ed.2d at 424–25; *United States v. Dinitz,* 424 U.S. at 607–09, 96 S.Ct. at 1079–80, 47 L.Ed.2d at 274; *United*

---

6. The clause, as contained in the Fifth Amendment to the United States Constitution, is made applicable to the states through the Fourteenth Amendment. *United States v. Dinitz,* 424 U.S. 600, 606 n. 8, 96 S.Ct. 1075, 1079 n. 8, 47 L.Ed.2d 267, 273 n. 8 (1976); *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).

*States v. Countryman,* 758 F.2d 574 (11th Cir. 1985).

██ In the matter before us, the trial justice specifically found that the prosecution had not deliberately withheld from defendant the results of the FBI's analysis of the shoes. In fact, the court was satisfied that the prosecution was unaware that the shoes even had been submitted to the FBI. Whether prosecutorial conduct was intended to provoke defendant into seeking a mistrial is a factual question. Such a determination is more appropriately left to the trial court. *United States v. Posner,* 764 F.2d 1535, 1539 (11th Cir.1985).

██ The factual determination made by the trial justice was not erroneous. In addition to relying on the prosecutor's assertion that he was unaware that the Warwick police department had sent the shoes to the FBI, the court noted that a letter of transmittal sent by the police department to the FBI, although describing several pieces of evidence being submitted for analysis, contained no mention of the canvas shoes. The record before us is devoid of any suggestion of intentional prosecutorial misconduct.

Therefore, even though the unintentional nondisclosure of the FBI report was sufficient to justify granting of a mistrial, such nondisclosure did not preclude retrial. There being no prosecutorial conduct intended to goad defendant into requesting a mistrial, retrial was not violative of the double-jeopardy clause.

## II

### *Whether the Trial Justice Abused His Discretion in Allowing Testimony Concerning the Theft of the Medical Treatment Card.*

At trial, the Veterans Administration outpatient medical-treatment information card, as well as testimony concerning its ownership and its discovery in the blue Cadillac, was admitted into evidence without objection. The card was identified as belonging to the furniture company's own-

er, Michael Turilli. Mr. Turilli testified that his wife had placed the card in her jewelry box but that the box and its contents had been stolen from their residence several months prior to the fire. Defense counsel then objected and moved to strike the entire line of testimony.

The court overruled the objection and denied the motion to strike, stating that the testimony was relevant and admissible to explain the travel of the card. The court, *sua sponte,* then issued the following cautionary instruction:

> "Ladies and gentlemen of the jury, the Court has permitted you to hear evidence regarding the card, where it had been and how Mr. Turilli had received the card and when the last time was that he had seen that card. The sole purpose for me permitting that testimony was so that you would understand the history and the travel of that card, at least according to the evidence, if you accept that evidence as credible and acceptable to you. The card is not to be considered in any way, shape or form as evidence that would link this defendant in any way with any break-ins or burglaries or anything of that nature at the Turilli home. He has not been charged or it has not been intended for that purpose."

Sylvia Turilli subsequently presented similar testimony concerning the card's loss. It was only after Mrs. Turilli described several other items that had been stolen from her home that defense counsel asserted an objection. The trial justice overruled the objection and denied defendant's motion to strike. The court then issued another cautionary instruction, similar to that quoted previously, to the jury. The trial justice reminded the jury that the Turillis' testimony concerning the treatment card's loss was to be considered only for the purpose of showing the history and travel of the card. He again cautioned that defendant had not been charged with any burglary at the Turilli home and the testimony was not to be considered as evidence of such an act.

■ In challenging the trial justice's admission of testimony concerning the theft of the treatment card, defendant contends that such testimony was irrelevant for any permissible purpose. Gordon argues that such testimony was relevant only for the damaging implication that he was the perpetrator of the burglary, with such an inference thereafter having been employed for the impermissible purpose of suggesting guilt of the arson and conspiracy charges. We disagree.[7]

The trial justice found that the challenged testimony was relevant to show the history and travel of the card, which had been admitted into evidence without objection. It is well settled that questions of relevancy of evidence, including whether the probative value of proffered testimony is outweighed by the danger of undue prejudice, are left to the sound discretion of the trial justice. The trial court's determination will not be disturbed on appeal absent a showing of prejudicial abuse of that discretion. *State v. Champa*, 494 A.2d 102 (R.I.1985); *State v. DiPrete*, 468 A.2d 262 (R.I.1983); *State v. Kaner*, 463 A.2d 1348 (R.I.1983).

■ We find no such error here. Since the card and testimony concerning its ownership and recovery were previously received into evidence, testimony concerning the card's theft was relevant for the permissible purpose of explaining the card's travel. Immediately after Mr. Turilli's testimony regarding the card's disappearance, and again following similar testimony by Mrs. Turilli, the trial justice instructed the jury concerning the limited purpose for which the testimony was to be considered. He expressly cautioned that defendant had not been implicated in any way in the housebreak and that the testimony was not to be employed to infer any

such involvement. This cautionary instruction was sufficient to eradicate any danger of undue prejudice.

■ Finally, defendant's argument that the card was irrelevant for any permissible purpose is based, at least in part, on his claim that the card itself was irrelevant. However, as previously noted, the card and testimony regarding its discovery were admitted into evidence without objection. The defendant therefore waived any objection to the card's admission and such an argument will not be considered on appeal. *State v. Ucero*, 450 A.2d 809 (R.I.1982); *State v. Duggan*, 414 A.2d 788 (R.I.1980).

### III

*Whether the Trial Justice Abused His Discretion by Admitting into Evidence the Note Written by Defendant to Ms. DesRoches.*

■ At trial, the note written by Gordon to Ms. DesRoches and found by police on a coffee table in the living room of the Marietta Street apartment on the afternoon of June 22, was admitted into evidence over defendant's objection. As basis for his objection, Gordon asserted that the note was irrelevant.

Having examined the contents of the note and reviewed Ms. DesRoches' testimony, we conclude that the trial justice did not abuse his discretion in admitting the note into evidence. In the letter, Gordon, in addition to expressing his affection for Ms. DesRoches, stated, "If we can do without it in jail, we can do without it on the street." This statement could reasonably be interpreted as suggesting flight in order to avoid prosecution. When considered in conjunction with Ms. DesRoches' testimony, the statement is probative of defend-

---

7. In addressing the merits of defendant's contention, we assume, without deciding, that Gordon's objection to the testimony was properly preserved for appeal. We are, however, mindful of the fact that although defendant objected to Mr. Turilli's testimony regarding the card's theft, he failed to assert a timely objection to the subsequent corroborating testimony of Mrs. Turilli. Ordinarily, a party loses the benefit of his original exception if he thereafter permits similar testimony on the same subject to be introduced into evidence without objection. *State v. Dettore*, 104 R.I. 535, 540, 247 A.2d 87, 90 (1968).

ant's consciousness of guilt of the crimes charged.

The note was not discovered until the afternoon of June 22. It could reasonably be inferred that if the note had been written prior to the fire, Ms. DesRoches, who had slept on a couch in the same room in which the note was ultimately found, would have seen it. Further, Ms. DesRoches testified that when she and Ms. Dowding left the apartment on the morning of June 22, defendant, who remained behind, was aware that the women were about to visit the fire scene in an attempt to retrieve the Cadillac. Therefore, there was sufficient evidence from which the jury could reasonably infer that the note was written shortly after the fire and in response to defendant's consciousness of guilt of the crimes charged. Given the close proximity between the time of the fire and the time of the note's composition, the document's probative value is substantial. *See State v. Cooke*, 479 A.2d 727 (R.I.1984).[8]

 The mere fact that defendant's statement regarding an ability to "do without it in jail" might possibly be viewed as a reference to previous incarceration, and thus as indicating prior criminal conduct, does not require exclusion of the note. We will not require exclusion of otherwise legally probative evidence simply because such evidence might also suggest past criminal activity. The prohibition against use of evidence of a defendant's prior criminal conduct to infer bad character and action in conformity therewith on the occasion in question does not mandate exclusion of all evidence, regardless of how otherwise legally probative, containing any reference to past criminal conduct. In the instant matter, the note was admitted to demonstrate Gordon's consciousness of guilt of the crimes charged. It was not admitted as evidence of prior criminal actions by defendant, nor to infer therefrom

bad character and action in conformity therewith on the occasion in question. The probative value of the letter outweighed any danger of undue prejudice to defendant.

 Finally, during oral argument, defense counsel contended that the cumulative effect of the admission of the note into evidence and of permitting testimony regarding the theft of the medical-treatment card constituted prejudicial error. However, as we have previously had occasion to state, rulings that individually are not erroneous cannot cumulatively constitute prejudicial error. *State v. Ashness*, 461 A.2d 659, 672 (R.I.1983).

## IV

*Whether the Trial Justice Committed Error in Denying Defendant's Motion for a Judgment of Acquittal on the Conspiracy Charge (Count 3).*

 In ruling on a motion for a judgment of acquittal, the trial justice must consider only that evidence which the prosecution claims is capable of generating proof of guilt beyond a reasonable doubt. Such evidence must be viewed in the light most favorable to the prosecution. The trial justice must draw therefrom all reasonable inferences consistent with guilt. In considering such a motion, the court shall neither weigh the evidence nor pass upon the credibility of the witnesses. *State v. Lemon*, 497 A.2d 713, 718 (R.I. 1985). In reviewing the trial court's ruling, our duty is the same. *State v. Pacheco*, 481 A.2d 1009, 1017 (R.I.1984). Applying such a standard in the matter before us, we conclude that there was sufficient evidence to support a jury determination that defendant had conspired with Rineer to commit the crime of arson.

 The essence of the crime of conspiracy is an unlawful agreement.

8. There, in discussing the probativeness of a defendant's flight to avoid prosecution, we stated that when the flight occurs virtually immediately after the commission of the crime charged, the probative value of such action is much greater than if the flight had occurred several weeks or months later.

Once the agreement is made, the offense is complete. *State v. Barton*, 427 A.2d 1311, 1312–13 (R.I.1981). Although a common agreement is the keystone of any criminal conspiracy, the terms of such an agreement are often difficult to prove. Consequently, the conspirators' goals may be inferentially established by proof of the relations, conduct, circumstances, and actions of the parties. *State v. Ahmadjian*, 438 A.2d 1070, 1084–85 (R.I.1981); *State v. Barton*, 427 A.2d at 1313.

■ We are satisfied that the evidence presented inferentially establishes guilt of conspiracy to commit arson. During the early morning hours of June 22, Ms. DesRoches overheard a portion of a conversation between Rineer and defendant in which one man stated, "Let's do it," and the other responded, "Okay." Shortly thereafter, both men left the apartment. The blue Cadillac was found at the fire scene. The defendant admitted to Ms. DesRoches that he had intended to, and had in fact set the fire. Ms. Dowding subsequently received a telephone call from Rineer, who was in the vicinity of the furniture company, requesting a ride. Such evidence, and the reasonable inferences which could be derived therefrom, sufficiently demonstrates the existence of an agreement between Rineer and Gordon to commit arson. Therefore, the trial justice properly denied defendant's motion for acquittal on count 3.

### V

*Whether the Trial Justice's Charge to the Jury, in Which He Defined Reasonable Doubt as "an abiding opinion amounting to a moral certainty," Constitutes Reversible Error.*

In his charge to the jury, the trial justice, after instructing that the state had the burden of proving beyond a reasonable doubt defendant's guilt of the offenses charged, articulated the following definition of "reasonable doubt":

"It does not mean beyond all doubt. * * The proper definition is beyond a doubt based on the evidence or lack of evidence before you. Not a mere fanciful doubt or a possible doubt * * * [but] an actual doubt founded in reason, which remains in your minds after you have fairly and impartially and thoroughly evaluated the evidence * * *. [I]f at that point there remains in your mind an abiding opinion amounting to a moral certainty that the defendant is guilty * * * then the state has proven its case beyond a reasonable doubt * * *. If, however, after reviewing all of the evidence * * * you are uncertain about any one of the essential elements of the offenses [charged], then that will mean that you do not have that abiding opinion amounting to a moral certainty that the guilt of the defendant has been proven beyond a reasonable doubt, and it will then become your civic duty to say not guilty."

On appeal, defendant argues that the trial justice's definition of proof beyond a reasonable doubt as "an abiding opinion amounting to a moral certainty" was erroneous. Specifically, defendant contends that the challenged instruction resulted in a lessening of the state's burden of proof. We disagree.

■ It is well settled that, in examining a party's challenge to specific instructions, the charge must be viewed in its entirety to determine its correctness. We will not examine single sentences. Rather, the challenged portions must be examined in the context in which they were rendered. *State v. Long*, 488 A.2d 427, 434–35 (R.I. 1985); *State v. Desmarais*, 479 A.2d 745, 747 (R.I.1984); *State v. Lambert*, 463 A.2d 1333, 1338 (R.I.1983). We must base our determination on how a reasonable juror would have interpreted the instructions. *State v. Long*, 488 A.2d at 435. An instruction which neither lessens nor shifts the burden of proof will be upheld. *Id.* at 434; *State v. Lambert*, 463 A.2d at 1338.

■ Examining the charge in its entirety, we conclude that the jury was properly

instructed concerning the standards by which it was to determine defendant's guilt or innocence. Read in the context of the entire charge, the challenged portions resulted neither in a shifting nor in a lessening of the prosecution's burden of proving each element of the offenses charged. *Cf. Dunn v. Perrin*, 570 F.2d 21 (1st Cir.1978) (definition of "reasonable doubt" is improper when it burdens defendant with establishing doubt). Throughout his charge, the trial justice repeatedly instructed the jury that the state had the burden of proving beyond a reasonable doubt defendant's guilt of the crimes charged. He emphasized that defendant had no burden of proving innocence and that defendant, in fact, enjoyed the presumption of innocence until such time, if any, that the jury determined that the state had met its burden of proof.

The defendant contends that use of the phrase "moral certainty" constitutes error per se. We find such an assertion to be without merit. In so doing, we note that although some courts, including the First Circuit Court of Appeals, have cast disapproving glances toward the use of such phraseology, they have declined to regard the use of such a phrase as error per se. Rather, the courts have elected to undertake a determination of whether the charge, taken as a whole, was adequate to apprise the jury of the appropriate standard. *See, e.g., United States v. Love*, 767 F.2d 1052, 1060 (4th Cir.1985); *United States v. Drake*, 673 F.2d 15, 21 (1st Cir. 1982).

For the reasons set forth above, the defendant's appeal is denied and dismissed and the conviction appealed from is affirmed. The papers in the case are remanded to the Superior Court.