■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JEROME LEWIS, Appellant. — Appeal by defendant from a judgment of the Supreme Court, Kings County, rendered September 15, 1977, convicting him of murder in the second degree, assault in the first degree, robbery in the first degree and burglary in the first degree, upon a jury verdict, and imposing sentence. Judgment affirmed. The People's direct case against defendant consisted of an eyewitness identification by the surviving victim, Ebenezer Dent, and of the finding of defendant's fingerprint at the scene of the crime. Dent testified that at about midnight of December 25, 1976, he and Harold Thomas left a Christmas party and went across the hall to Thomas' apartment in order to get more ice for the party. Upon entering Thomas' apartment, Dent and Thomas surprised a burglar, who, after a brief verbal exchange, proceeded to shoot and kill Thomas and to shoot and wound Dent. With the two men thus out of the way, the burglar continued his activities for several minutes before leaving. During this time Dent observed the burglar whenever he was not looking at him. A few days later, while still in the hospital, Dent was shown a photographic array by a detective and selected the photograph of defendant. When defendant was subsequently arrested and fingerprinted, his prints were compared to those found in the apartment. One of defendant's fingerprints was found to match one of those found in the apartment. One of defendant's contentions on this appeal concerns the inadvertent elicitation by the prosecutor of the fact that defendant had remained silent upon arrest. The arresting detective was called by the prosecutor for his testimony that he fingerprinted defendant upon his arrest and observed him sign the fingerprint card. However, in the direct questioning of the detective, the following occurred: "Q Now, Detective, can you tell us what you did after you placed Jerome Lewis under arrest? A I advised him of his rights. *He refused—he did not make a statement.* Subsequently I brought him down to Central Booking, where he was processed, fingerprinted, and photoed *[sic]* and so on. Q Were you present when he was fingerprinted? A Yes, I was. Q I would like to show you a card. Do you recognize that card? A Yes, that was one of the fingerprint cards. He signed the print card in my presence" (emphasis added). On cross-examination, defense counsel developed the issue further: "Q Well, going back to the moment when you said you placed him under arrest, you said you advised him of his rights. This is done in all cases; is that correct? A That's correct. Q And for edification of the jury, advising of the rights, you told him that he had the right to remain silent? A That's right. Q And you said he didn't make any statement to you; is that right? A That's correct." After the detective was excused, the prosecutor called the attention of defense counsel and the court to the elicitation and asked how defense counsel proposed to deal with it. Defense counsel declined to

ask for a curative instruction or for a mistrial and stated in part: "I did not object at the time, nor did I choose not to go into it on cross-examination, feeling the door was opened then and, as a part of trial strategy and as a trial lawyer, I felt was using it to my advantage, and I see no problem with it then, now, or in the future." While it is generally error for the prosecutor to elicit the fact of a defendant's postarrest silence *(Doyle v Ohio,* 426 US 610), under the circumstances of this case, the error was waived. Furthermore, when viewed against the overwhelming evidence of defendant's guilt this error was harmless beyond a reasonable doubt (cf. *People v Clark,* 74 AD2d 581). Defendant also asks this court to reverse in the interest of justice because of a remark made by the prosecutor in his closing argument. In discussing the element of intent in connection with the intentional murder count, the prosecutor told the jury, *inter alia,* that "a man is presumed to intend the natural and probable consequences of his act." No objection was made. While we recognize that the formulation used by the prosecutor was improper under *Sandstrom v Montana* (442 US 510), we decline to reverse on this ground. Suffice it here to note that defendant was acquitted of intentional murder and was convicted only of felony murder so that the prosecutor's remark was of no consequence. Defendant also seeks reversal in the interest of justice because the court in its instructions told the jury that it could convict defendant of felony murder if it found that the murder occurred during the course or in furtherance of the robbery or burglary. Defendant correctly points out that the indictment predicated the felony murder only on the burglary. Defendant contends that this variance prejudicially altered the theory of the indictment (see, e.g., *People v Boyd,* 59 AD2d 558). We note that while it would have been extremely easy for the court to cure this error, timely objection was not made and exception was not taken to the charge. We decline to reverse in the interest of justice because we believe the error in no way harmed defendant. Defendant was charged with and was convicted of both the burglary and the robbery. There can be no claim that he did not have adequate notice of the charges against him or that he was in any way surprised. His defense of mistaken identification was in no way prejudiced by the error. Under these circumstances, we believe that the variance was harmless and did not affect defendant's substantial rights (see *Berger v United States,* 295 US 78). Mollen, P. J., Titone, Margett and Weinstein, JJ., concur.