Glen Irving Taylor was indicted for the "carnal knowledge" of a six year old girl. He was tried by a jury which returned a verdict of "guilty as charged." Pursuant to this verdict and in light of "the nature of the crime involved in this case," the trial court sentenced appellant to "imprisonment in the penitentiary for life."
Appellant then filed a motion for a new trial which was denied.
The prosecutrix in this case, a six year old child, testified that on or about September 5, 1979, the appellant, who was living with the prosecutrix and her mother at the time, sexually molested her. She stated that she and the appellant were at home alone when he carried her into her mother's bedroom, put her on the bed, stripped her of her clothes, climbed on top of her and had sexual intercourse with her. Some time later the prosecutrix told her mother of the incident.
On September 10, 1979, the prosecutrix' mother and appellant had a heated argument allegedly over the appellant's sexual abuse of the prosecutrix five days before. Their argument created such a disturbance that the police were called to investigate.
As a result of their investigation, which included an interview with the prosecutrix about the alleged sexual abuse, the police arrested both the appellant and the prosecutrix' mother for "disturbing the peace" and took the prosecutrix into "protective custody."
The investigating officers testified that while they were investigating the "disturbance" at the prosecutrix' residence, appellant told them that if he had sexually assaulted the prosecutrix, he was drunk at the time. *Page 553 
Medical evidence adduced at trial indicated that the prosecutrix' vagina had indeed been enlarged and that such enlargement could have resulted from sexual intercourse with an adult male.
There was also evidence that the prosecutrix had been raped by her natural father (not the appellant) five or six months prior to this incident involving the appellant.
Furthermore, medical examinations of the prosecutrix and appellant revealed that the prosecutrix had gonorrhea, while the appellant apparently did not. The prosecution's medical expert explained that if the prosecutrix contracted gonorrhea during this alleged act of intercourse with the appellant, the appellant should have tested positive for gonorrhea. However, this expert witness further explained that it is not uncommon for a male to be a "carrier" of gonorrhea. In such a case, the "carrier" could test negative for gonorrhea and yet be able to transfer it to another party through intercourse. It was also pointed out that the appellant could have cured himself of the disease before he was tested and that the prosecutrix could have contracted the disease from another source. In any event the evidence regarding the "gonorrhea" issue was confusing, highly technical, and rather inconclusive.
The appellant's only defense was that the incident never occurred, that he had no physical contact with the prosecutrix whatsoever. In support of this position, he produced several character witnesses who vouched for his "good character."
 I
Appellant's major contention on appeal is that the trial court erred when it failed to grant appellant a mistrial after the prosecution, during closing argument, introduced evidence that the prosecutrix' mother had gonorrhea. According to the appellant, this fact, which was not in evidence, was not only relevant to the question of appellant's guilt, but also highly prejudicial and ineradicable from the minds of the jury. We disagree.
The record (R. 263) sets out (out of context) the prosecution's statement contested by appellant here: "[t]estimony that her mother had gonorrhea." The appellant contends that this was a deliberate and calculated attempt on behalf of the prosecution to get a fact, not in evidence, before the jury. The state claims that this was an inadvertent slip on behalf of the prosecution.
In either event, the trial court immediately sustained appellant's objection to this statement, instructed the jury to disregard it and instructed the prosecutor to "refrain from going into the mother's aspect of this." (R. 263-264). This being the sum and substance of this improper argument, we feel that the statement was arguably not even prejudicial and that without question, any potential harm to the appellant was eliminated by the trial court's prompt actions. Simpson v.State, 354 So.2d 317 (Ala.Cr.App. 1977), cert. denied,354 So.2d 324 (Ala. 1978); Flint v. State, 370 So.2d 332
(Ala.Cr.App. 1979).
We are also reminded that the propriety of arguments of counsel is largely within the discretion of the trial court because the trial court is best able to assess the issues, parties, and circumstances of each case and determine the potential prejudicial impact of the improper argument on the jury. Garrett v. State, 268 Ala. 299, 105 So.2d 541 (1958);Madison v. State, 55 Ala. App. 634, 318 So.2d 329, cert. denied,294 Ala. 764, 318 So.2d 337 (1975); Simpson v. State, supra.
Here, the trial court knew the jury had direct evidence from the prosecutrix, which, if believed, would fully support a conviction. The trial court was also aware of the confusing nature and highly technical aspects of the "gonorrhea" issue and knew the impact of this issue upon the jury during the trial. The trial court was, therefore, in the best position to judge the potential prejudice to this appellant and we will not disturb its decision in denying appellant's motion for a mistrial. Garrett, supra; Simpson, supra. *Page 554 
 II
Appellant also asserts that it was error for the trial court to refuse appellant's written requested charge on the "lesser included offense" of "sexual abuse in the first degree," § 13-1-137, Code of Alabama 1975.
The law in Alabama in this regard is that the trial court may, within its discretion, refuse a charge which is not applicable to the evidence presented at trial even though said charge is arguably a correct statement of law. Weldon v. State,50 Ala. App. 477, 280 So.2d 183, cert. denied, 291 Ala. 801,280 So.2d 186 (1973); Boyd v. State, 350 So.2d 757 (Ala.Cr.App. 1977).
During the trial of this case neither party contended that the crime committed was, arguably, "sexual abuse in the first degree" pursuant to § 13-1-137. The state's case was solely in support of the "carnal knowledge" charge without any assertions of an alternative offense. In defense, the appellant merely denied any contact whatsoever with the prosecutrix. He made no assertions and produced no evidence that would have supported the "lesser included offense." Therefore, the only question presented to the jury by the evidence was whether or not the act of "carnal knowledge" occurred. Consequently, the trial court did not abuse its discretion in refusing appellant's requested charge on the "lesser included offense." Weldon, supra; Boyd, supra.
 III
Appellant's other assertions that the prosecutrix was incompetent as a witness and that the sentence of life imprisonment was "cruel and unusual" also cover matters that are largely within the discretion of the trial court. Since we find no abuse of discretion in these matters, appellant's contentions are without merit.
 A
Appellant's "incompetency" argument asserts that the six year old prosecutrix was too young to testify and that parts of her testimony were self-contradictory. In answer to the latter assertion, we need only point out that discrepancies in the testimony of a particular witness go to the credibility of that witness rather than his or her competency. As for the minimum age at which one is competent to testify, other cases adequately outline the trial court's discretion in this matter and explain that in many cases, as here, the failure to qualify an otherwise competent witness merely because of his or her "tender years" would be an action creating an immunity from offenses involving young persons "of tender years." Hacker v.State, 31 Ala. App. 249, 15 So.2d 336, cert. denied, 244 Ala. 649, 15 So.2d 339 (1943); Roberson v. State, 384 So.2d 864
(Ala.Cr.App.), cert. denied, 384 So.2d 868 (Ala. 1980);Harville v. State, 386 So.2d 776 (Ala.Cr.App. 1980).
 B
We, likewise, agree with the trial court in setting the "life" sentence for this appellant.
The punishment specified for the crime of "carnal knowledge of a child under the age of 12" pursuant to § 13-1-133, Code of Alabama 1975, is "imprisonment in the penitentiary for not less than 10 years." No maximum limit is set. The trial court was therefore authorized to fix punishment at life imprisonment as long as such punishment was not disproportionate to the offense for which appellant was convicted.
The record (R. 281) clearly shows that the trial judge carefully considered the appropriateness of the life sentence he imposed:
 "THE COURT: The court, at times, is faced with a very grave decision to make on behalf of all parties involved, and I'm taking and have considered the youth of this defendant being twenty-three years of age, and yet, due to the nature of the crime involved in this case the Court feels that there is no middle ground on it. I'm fixing punishment at imprisonment in the penitentiary for life."
We would also point out that, except for murder, there is not a more heinous or *Page 555 
atrocious crime than the "carnal knowledge" of a young child.
For these reasons, we concur in the decision of the trial court and find that a "life sentence" under the circumstances of this case, is not "cruel and unusual."
For the reasons stated, this case is due to be and is hereby affirmed.
AFFIRMED.
All the Judges concur.