On Application for Rehearing
This Court's opinion of December 20, 1996, is withdrawn, and the following opinion is substituted therefor:
The appellant was charged in two indictments with the distribution of a controlled substance, violations of § 13A-12-211, Ala. Code 1975; these two cases were consolidated for trial by agreement of the parties.
The appellant was found guilty of one of the distribution charges, but was acquitted of the other. He was subsequently sentenced to life imprisonment under the Habitual Felony Offender Act, and his sentence was enhanced by an additional five years' imprisonment because the sale took place within three miles of a school and another five years' imprisonment because the sale also occurred within three miles of a housing project.
 I
On appeal, the appellant argues that the trial court committed reversible error in denying the appellant's motion for a mistrial. The motion was made after the prosecutor commented in his opening statement that he expected the appellant to testify at trial.[1]
The record indicates that during his opening statement, the prosecutor told the jury that he expected "Mr. Baxter" to testify in this case. Immediately after making this statement, the prosecutor advised the jury that he did not mean to say "Baxter," but instead meant to say "Boswell," the name of the State's confidential informant. The appellant made a timely motion for a mistrial. The trial court denied the appellant's motion and did not give any curative instruction. The prosecutor stated outside the presence of the jury that the comment was unintentional, and defense counsel appeared to agree. The appellant did not testify at trial.
The appellant argues that the prosecutor's remark constituted a direct comment on his failure to testify, and argues further that the trial court's failure to give a curative instruction necessitates a reversal and a remand for a new trial. The State argues that the judgment in this case should not be reversed because the prosecutor did not intend to comment on the defendant's failure to testify and because he immediately corrected himself. In support of this argument, the State citesEx parte McWilliams, 640 So.2d 1015 (Ala. 1993). In Ex parteMcWilliams, the Alabama Supreme Court stated that "`the facts and circumstances of each case must be analyzed to determine whether the language used was manifestly intended and was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify.'" 640 So.2d at 1020.
The record indicates that the prosecutor's direct reference to the appellant as someone expected to testify was unintentional. This is evidenced by the fact that the prosecutor immediately corrected himself before defense counsel could object and move for a mistrial. This Court has addressed other situations in which prosecutors or witnesses made "inadvertent slips." In these situations, this Court has consistently held that the "inadvertent slips" were not reversible error and could not serve as the basis for a mistrial where the trial court took immediate action in sustaining an objection to the comments and in giving curative instructions to the jury. Thus, the jury was clearly informed that these unintentional statements were not to be considered.
 "When, as here, a trial court immediately charges the jury to disregard improper remarks, there is a prima facie presumption against error. Elmore v. State, 424[414] So.2d 175 (Ala.Crim.App. 1982); Kelley v. State, 405 So.2d 728 (Ala.Crim.App.), cert. denied, 405 So.2d 731 (Ala. 1981); Chambers v. State, 382 So.2d 632 (Ala.Crim.App.), cert. denied, *Page 813 382 So.2d 636 (Ala. 1980); Nix v. State, 370 So.2d 1115
(Ala.Crim.App.), cert. denied, 370 So.2d 1119 (Ala. 1979)
 "Where a trial court acts promptly to impress upon the jury that improper questions are to be disregarded by them in their deliberations, the prejudicial effects of such remarks are removed. Minor v. State, 402 So.2d 1121 (Ala.Crim.App. 1981); Grey v. State, 369 So.2d 889 (Ala.Crim.App. 1979); Brown v. State, 366 So.2d 334 (Ala.Crim.App. 1978); Woods v. State, 344 So.2d 1225 (Ala.Crim.App.), cert. denied, 344 So.2d 1230 (Ala. 1977). Even `inadvertent slips' which are prejudicial to a defendant need not be cause for a mistrial where the judge acts promptly to impress upon the jury that improper statements are not be to be considered by them. Richardson v. State, 374 So.2d 433 (Ala.Crim.App. 1979); Elmore, supra."
Woods v. State, 460 So.2d 291, 295 (Ala.Cr.App. 1984) (the prosecutor's improper question to the defendant, i.e., whether he had ever shot anyone before the offense for which he was being tried, was not reversible error, where the trial judge issued immediate curative instructions to the jury to disregard comment). See also Ray v. State, 527 So.2d 166, 169 (Ala.Cr.App. 1987) (referring to the appellant as "pervert" did not result in a mistrial where the trial court immediately impressed upon the jury that the improper statement should be disregarded.)
In Richardson v. State, 374 So.2d 433 (Ala.Cr.App. 1979), a witness, who had previously been cautioned not to make a specific statement, made the improper statement. The statement was followed by an objection by defense counsel which the trial court sustained. The trial court then gave curative instructions to the jury to disregard the remark. Thereafter, defense counsel moved to suppress the State's evidence and moved for a mistrial based "`on the inadvertent slip by the young prosecution witness. . . . I realize it is nobody's fault. He just doesn't know what to do. He just said something.'" Id., at 435. The trial court denied the motion for a mistrial and admonished the jury to disregard the statement. In Richardson., supra, this Court held:
 "While Thompson's `inadvertent' slip was prejudicial to the defendant, we cannot state that it deprived the defendant of a fair trial in view of the trial judge's instructions to the jury. If the trial judge acts promptly to impress on the jury that improper statements are not to be considered by them in their deliberation, the prejudicial effect of the remarks is removed. Woods v. State, 344 So.2d 1225, 1229
(Ala.Cr.App. 1976), cert. quashed, Ex parte Woods, 344 So.2d 1230 (Ala. 1977)."
374 So.2d at 435.
Similarly, in Cole v. State, 548 So.2d 1093 (Ala.Cr.App. 1989), a comment made by the prosecutor during closing argument was objected to and was the basis for a motion for a mistrial. On appeal, Cole argued that it was reversible error, because, among other reasons, it was an improper comment on the defendant's failure to testify. However, because the trial court sustained the objection, instructed the jury to disregard the comments, and polled the jury to ensure that it could and would follow these instructions, there was a "prima facie presumption against error." Id., at 1096-97.
In Taylor v. State, 408 So.2d 551, 553 (Ala.Cr.App. 1981), the prosecutor made a comment during his closing argument that the prosecutrix's mother had gonorrhea. The State claimed that this comment was an "inadvertent slip." This Court held that the comment was "arguably not even prejudicial" and, due to the trial court's actions in immediately sustaining the objection and then instructing the jury to disregard the comment, as well as instructing the prosecutor to refrain from further such comments, any potential harm was "without question" eliminated by these prompt actions. Id.
"Alabama law clearly holds that [w]here there is the possibility that a prosecutor's comment could be understood by the jury as a reference to failure of the defendant to testify, Art. I, § 6 [Const. of Ala. of 1901] is violated." Ex parteWilson, 571 So.2d 1251 1262 (Ala. 1990). Moreover, "the fact that the comment occurred during opening statements, rather than during closing arguments, does not prevent the remark from being a comment on the defendant's *Page 814 
failure to testify." Purser v. State, 607 So.2d 301, 303 (Ala. 1992).
 "`It does not matter that during the opening statement the accused has or has not taken the stand, his constitutional right to remain silent may still be violated. The argument that no harm can be ascertained from remarks indifferent to that right until closing arguments, after the accused has elected not to testify is ill conceived and ill thought out. Certainly, we would be remiss in our duty if we failed to recognize the danger of the district attorney, early in the proceedings, directly or indirectly focusing the jury's attention on what the accused will or will not testify to, or on what he previously has or has not admitted. In many instances, if this tactic were allowed, the prejudice to the accused would be even greater than if the comment were made after all the testimony had been taken. If permitted, the jury would be on their constant guard, anticipating the accused's "chance to tell his story." This form of prejudice to an accused's right to receive a fair trial will not be sanctioned or tolerated by this court. An accused's right to remain silent is inviolable at every stage in the proceedings and must be afforded due protection.'
 "Collins v. State, 385 So.2d 993, 1001
(Ala.Cr.App. 1979), reversed on other grounds, 385 So.2d 1005 (Ala. 1980)."
607 So.2d at 303.
Although a prosecutor's improper reference to a defendant's failure to testify may be eradicated, a trial court should act immediately in sustaining an objection and in giving curative instructions to the jury to eradicate the error, even if the reference is inadvertent.
 "At a minimum, under such circumstances, the trial judges should sustain the objection and immediately instruct the jury as to the impropriety of the remark made by the district attorney. In giving a curative instruction on the defendant's right not to testify, the trial judge should read the statute and explain thoroughly and immediately to the jury that the defendant's failure to testify in his own behalf shall not create any presumption against him. As we previously stated in Whitt [v. State, 370 So.2d 736, 739 (Ala. 1979)]:
 "`We suggest that, at a minimum, the trial judge must sustain the objection, and should then promptly and vigorously give appropriate instructions to the jury. Such instructions should include that such remarks are improper and to disregard them; that statements of counsel are not evidence; that under the law the defendant has the privilege to testify in his own behalf or not; that he cannot be compelled to testify against himself; and, that no presumption of guilt or inference of any kind should be drawn from his failure to testify. With appropriate instructions, we hold that the error of the prosecutor's remarks will be sufficiently vitiated so that such error is harmless beyond a reasonable doubt. [United States v.] Brown, 646 F.2d 166 (5th Cir. 1977); Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); Beecher v. State, [294 Ala. 674,-] 320 So.2d 727 (1975).'"
 "A curative instruction in a situation of this type, to be of any value, must be given immediately after the harmful statement is made. Further, where there can be any reasonable doubt as to the particular statement in question, the statement should be explicitly identified to the jury so that it can know that must not be considered."
Ex parte Wilson, 571 So.2d 1261, 1265 (Ala. 1990). See Bailey v.State, 717 So.2d 3, 5 (Ala.Cr.App. 1997) (although the prosecutor "may not have intended to comment on the appellant's failure to testify, we [this Court] are of the opinion that he did", and the trial court's "good faith attempt to cure the effects of the prosecutor's remarks . . . fell short of the requisite standards"). See also Jackson v. State, 629 So.2d 748, 753
(Ala.Cr.App. 1993); State v. Gotcher, 52 Wn. App. 350,759 P.2d 1216, 1219 (1988) (the Prosecutor's misstatement of the law required a reversal where the trial court "had an opportunity to prevent the confusion when defense counsel objected to the State's closing argument"; however, the trial court "failed to *Page 815 
cure the misstatement by overruling the objection and by not clarifying the law to the jury" 759 P.2d at 1219). "In less extreme situations, misconduct may be rectified through the use of curative jury instructions . . . and the trial court may also instruct the prosecutor to retract an offending statement before the jury." State v. Boetti, 142 N.H. 255, 699 A.2d 585, 588-89
(1997). See also State v. Forrest, 670 So.2d 1263, 1270
(La.Ct.App. 1996) ("it is clear from a reading of the argument as a whole that, while the prosecutor's comment was a misstatement of the evidence presented at trial, his error seemed inadvertent and not intended to mislead the jury. The mistake was corrected by the judge on the record. There is no showing here that the trial court's correction was not sufficient to ensure defendant a fair trial.") Cf. State v. Grenawalt, 86 Or. App. 96, 98-99,738 P.2d 232, 233 (1987) ("[t]he fact that a prosecutor's conduct is not intentional does not affect a defendant's fundamental right to a fair trial. Advocating an improper basis for a conviction cannot be anything but prejudicial. Although no curative instruction was requested, the harm had been done, and no instruction could have done other than add to the harm").
Although direct comments on a defendant's failure to testify can amount to reversible error, whether they do must be determined on a case-by-case basis, and, under certain circumstances, the comment may be curable or may be harmless. In deciding whether such an improper remark constitutes harmless error, courts have looked at certain factors. The Tennessee Supreme Court listed the following five factors to consider in making this determination:
 "1. The conduct complained of viewed in the context of the light of the facts and circumstances of the case.
 "2. The curative measures taken by the court and the prosecution.
 "3. The intent of the prosecutor making the improper statement.
 "4. The cumulative effect of the improper conduct and any other errors in the record.
"5. The relative strength or weakness of the case.
 "Judge [v. State], 539 S.W.2d [340], 344 [(Tenn.Crim.App. 1976), approved in State v. Buck, 670 S.W.2d 600, 609 (Tenn. 1984).] The court should also consider whether the remarks were lengthy and repeated or whether they were single and isolated. Id Moreover, courts must remain cognizant of the fact that remarks require reversal only when the remarks 'so infected the trial with unfairness as to make the subsequent conviction a denial of due process.' In addition to these factors consideration should be given to the principle that a prompt instruction by the trial judge generally cures any error, since the jury is presumed to have followed the trial judge's instructions."
State v. Taylor, (Ms. 02CO1-9501-CR-00029, October 10, 1996), 1996 WL 580997 (Tenn.Crim.App. 1996) (some citations omitted) (unpublished opinion). In State v. Taylor, supra, the court determined that the misstatement by the prosecutor was inadvertent and was corrected by the prosecutor. The trial court gave curative instructions and, in light of the overwhelming evidence, the error was determined to be harmless. See alsoPeople v. Colban, 151 Misc.2d 32, 33-35, 571 N.Y.S.2d 873, 874-75
(1991) (where the prosecutor referred to a defendant's failure to testify at the grand jury stage, the court listed circumstances to be considered in determining whether the indictment would have to be dismissed based upon the comment: ". . . was the prosecutor's reference unsolicited or was it made in response to a juror query or some compelling circumstance? What was the nature and extent of the reference? What was the context in which it was made? Was it followed by a prompt curative . . . instruction? In addition, since prejudice to the defendant cannot always be measured with pinpoint accuracy, the Court should also consider whether the evidence before the grand jury was overwhelming or just barely sufficient." (citation omitted)).
In State v. Turgeon, 137 N.H. 544, 630 A.2d 276 (1993), during the State's closing argument, the prosecutor responded to the case presented by the defense, stating, in part, "Did [the defendant] tell you that he started this fire by mistake?" While *Page 816 
acknowledging that a prosecutor is forbidden from commenting on a defendant's failure to testify at trial, the court stated that the comment should be evaluated by balancing several factors: "`the severity of the misconduct, whether it was deliberate or accidental, the context in which it occurred, the likely curative effect of the judge's admonitions, and the strength of the evidence against the defendant.' [United States v. Ingraldi, 793 F.2d [408,] 416 [(1st Cir. 1986)]; see United States v. Cox,752 F.2d 741, 745 (1st Cir. 1985)." 137 N.H. at 547,630 A.2d at 277-78.
In Moore v. State, 669 N.E.2d 733 (Ind. 1996), the prosecutor "inadvertently mentioned [the defendant's] decision not to testify and then immediately attempted to correct that slip of the tongue." The Indiana Supreme Court determined that under the facts of that case "a reasonable jury could not have interpreted the statement as a suggestion to infer guilt from [the defendant's] silence." Id. at 739. The Court opined:
 "There may be an understandable impulse to deem intentional comments improper and inadvertent ones valid. Courts have occasionally refused to find a remark erroneous because they have concluded that `the motive behind the statement' was benign or the remark was `a slip of the tongue,' United States v. Dorsey, 819 F.2d 1055, 1061 (11th Cir. 1987).
 "Under [a certain judicial test for analyzing comments on failure to testify], the propriety of a prosecutor's remark does not turn on an inquiry into his or her subjective motivation. The purpose of the no-comment rule is to protect a defendant's right to remain silent by preventing prosecutors `making its assertion costly.' Griffin[ v. California,] 380 U.S. [609,] 614 85 S.Ct. 1229, 14 L.Ed.2d 106] (1965) . . .
 [S]ome courts have held that any direct reference to a defendant's silence is improper per se. They inquire into the effect of a remark only if the remark is indirect. . . .
 "The U.S. supreme (Court, however, has declined to give Griffin an absolutist reading and has rejected the argument that all `direct' references are improper. United States v. Robinson, 485 U.S. 25, 31-32, 108 S.Cr. 864, 868-69, 99 L.Ed.2d 23 (1988)."
Moore v. State, supra, at 738-39. The Court in Moore v. State, supra, determined that the prosecutor's remark constituted harmless error under the facts of that case, using the following analysis:
 "Even if we thought the statement by [the] prosecutor was improper under the federal Constitution, we would not revere the convictions. A court may affirm a conviction despite an improper prosecutorial comment if it can `declare a belief that [the comment] was harmless beyond a reasonable doubt.' Chapman v. California, 386 U.S. 18, 24, 87 S. Ct. 824, 828, 17 L.Ed.2d 705 (1967). The State bears the burden of proof and, with it, the risk of plausible uncertainty. 386 U.S. at 24, 87 S.Ct. at 828. Although a reviewing court must consider a counterfactual question — whether the jury would have convicted the defendant absent the comment, United States v. Hasting, 461 U.S. 499, 510-11, 103 S.Ct. 1974, 1981-82, 76 L.Ed.2d 96 (1983) — courts have developed a number of methods for determining an answer. We think the State has met its burden in this case.
 "Most concretely, courts have looked for obvious indication of influence or impartiality in the behavior of the jury. For example, the return of not-guilty verdicts in matters that would have been equally affected by an improper comment suggests that the comment was not prejudicial. See [United States v. LeQuire, 943 F.2d 1554 at 1567 [(11th Cir. 1991)]; cf. Splunge v. State, 641 N.E.2d 628, 634 (Ind. 1994) (Sullivan, J., dissenting) (objecting to finding of harmless error where prior trial had resulted in hung jury). In the typical case, however, as in this case, such indicators are not present.
 "Courts have also developed less direct approaches to the question of prejudice. They have analyzed the probability that an improper comment altered the jury verdict. This probability is generally a function of three factors: the persuasiveness of the comment, the relative strength of the State's case, and the effectiveness of the *Page 817 
trial judge's response to the comment. See Chapman, 386 U.S. at 22, 87 S.Ct. at 827 (`[H]armless error rules can work very unfair and mischievous results when, for example, highly important and persuasive evidence, or argument, though legally forbidden, finds its way into a trial in which the question of guilt or innocence is a close one.)' . . . Such formulas are not mathematical. The question is whether a court, after comparing these factors, is confident that the improper comment did not alter the verdict.
 "Persuasiveness is relevant because the central issue is whether a comment has prejudiced the jury. Obviously, statements that implore jurors to infer guilt from silence are the greatest threat. See Anderson v. Nelson 390 U.S. 523, 88 S.Ct. 1133, 20 L.Ed.2d 81 (1968) (per curiam); [United States v.] Tarazon, 989 F.2d [1045] at 1052 [(9th Cir. 1993)]; cf. United States v. Passaro, 624 F.2d 938, 945 (9th Cir. 1980) (refusing to reverse conviction where prosecutor had made `no attempt to link a conclusion of guilt with defendant's silence.'). Remarks directly referring to a defendant's silence are also more prejudicial than indirect references. See Bernard v. State, 540 N.E.2d 23, 25 (Ind. 1989) (The comments `were prolix and only marginally improper because vague and disjointed.').
 "Similarly, extensive or repetitive comments are generally more serious than a single, isolated statement. Anderson, 390 U.S. at 524, 88 S.Ct. at 1133-34; Chapman, 386 U.S. at 26, 87 S.Ct. at 829. The use of inflammatory rhetoric or suggestive body language may also make improper comments more influential than less provocative ones. See LeQuire, 943 F.2d at 1567; United States ex rel. Leak v. Follette, 418 F.2d 1266, 1270 (2d Cir. 1969). Intent, too, can be relevant, for intentional comments are likely to be more effective than inadvertent ones. See Splunge, 641 N.E.2d at 630. Finally, a comment's larger context may reveal that jurors would have been more likely to interpret the statement one way than another. Cf. Hopkins v. State, 582 N.E.2d 345, 348
(Ind. 1991) (holding remark not improper where it was `focused not on the absence of testimony from the defendant, but rather on [other evidence']).
 "In addition to the persuasiveness of a comment, a court also should consider the strength of the State's case. Courts have sometimes resolved the harmless error question based solely on the `overwhelming' nature of the evidence against the defendant. Lee v. State, 531 N.E.2d 1165 (Ind. 1988); Freeman v. Lane, 962 F.2d 1252, 1262 (7th Cir. 1992). While that factor may be determinative in some cases, the inquiry is often more complex. See, e.g., Splunge, 641 N.E.2d at 630 (finding error harmless after considering intent of prosecutor, directness of reference, extensiveness of reference, and overwhelming nature of evidence). Nevertheless, the impact of even an objectively persuasive comment depends on the relative length of the case against a defendant. See Anderson, 390 U.S. at 524, 88 S.Ct. at 1133-34; United States v. Pallais, 921 F.2d 684
(7th Cir. 1990); United States v. Ashford 924 F.2d 1416 (7th Cir., 1991). In effect, a court must measure the strength of the case by reviewing a redacted replay of the trial through the jurors' eyes. See, e.g., United States v. Hasting, 461 U.S. 499, 511-12, 103 S.Ct. 1974, 1981-82, 76 L.Ed.2d 96; Fontaine v. California, 390 U.S. 593, 595-96, 88 S. Ct. 1229, 1230-31, 20 L.Ed.2d 154 (1968) (per curiam); Williams v. Lane, 826 f.2d 654, 667 (7th Cir. 1987).
 "Finally, a court must assess the effectiveness of any corrective measures taken by the trial judge."
Id. at 739-41.
United States v. Dorsey, 819 F.2d 1055 (11th Cir. 1987), involved factual circumstances similar to those of the present case. In Dorsey the prosecutor, during his closing argument, argued to the jury, "and I ask you, ladies and gentlemen, to take the testimony of Mr. Dorsey [the defendant] and combine it with the testimony of Mr. Alford [arresting agent on Mr. Dorsey's subsequent drug conviction]. . . ." Dorsey did not testify, and he argued on appeal that the prosecutor's reference was an improper comment on his right not to testify and that the trial court *Page 818 
erred in denying his motion for a new trial on this ground. The Court held:
 "[T]he test for determining whether a statement made in court is a comment on the failure of a defendant to testify is whether the statement was either `manifestly intended or was of such character that a jury would rationally and necessarily take it to be a comment on the failure of the accused to testify.' United States v. Countryman, 758 F.2d 574, 578 (11th Cir. 1985) quoting, United States v. Berkowitz, 662 F.2d 1127, 1136 (5th Cir. Unit B. 1981). In applying this standard, the court must examine the comment in context to evaluate the motive behind the statement and its impact on the jury. United States v. Watkins, 811 F.2d 1408, 1412 (11th Cir. 1987)."
Id. at 1061. The Court determined that the prosecutor's remark during his closing argument was "obviously a slip of the tongue, " whereby he, had accidentally identified the defendant rather than a witness. The Court further held that the appellant's failure to object "highlights the innocuous nature of the remark." Id. at 1061-62. The Court stated, "Clearly, the prosecutor had neither the intent nor the effect of referring to Dorsey's decision not to testify and hence no prejudice to the defendant resulted from the comment." Id. at 1062. See alsoPeople v. Sanders, 108 A.D.2d 316, 319, 489 N.Y.S.2d 348, 351
(1985) (the prosecutor inadvertently stated in his opening remarks that a witness would identify the defendant, but the court found the error to be harmless because any possible prejudice to the defendant was alleviated most importantly when the prosecutor "immediately retract[ed] the statement and [told] the jury `there are no eye-witnesses.' [The witness] will not come in to this courtroom and identify James Sanders, the defendant.")
In People v. Lewis, 79 A.D.2d 977, 434 N.Y.S.2d 450 (1981), the court held the prosecutor's inadvertent elicitation of the fact that the defendant had remained silent when he was arrested to have been harmless error beyond a reasonable doubt in light of the overwhelming evidence of the defendant's guilt and because the prosecutor had called defense counsel's and the court's attention to this elicitation, asking how defense counsel proposed to deal with it.
In the present case, the prosecutor's remark was a singular incident and was clearly inadvertent. Although the trial court failed to give curative instructions, the prosecutor immediately retracted his remark and corrected his statement. Moreover, there was overwhelming evidence of the appellant's guilt. A confidential informant had made two separate purchases of cocaine from the appellant and the first transaction was recorded. Moreover, both times the confidential informant returned from his meeting with the appellant with no money and in possession of what subsequently proved to be cocaine. Following the second buy, a search warrant was secured for the residence where the transactions took place.[2] Upon entering the residence, the officers heard the toilet flushing; when they entered the bathroom, they retrieved a razor blade from the toilet. Moreover, during the search, the officers found a box of unused razor blades, a plate, plastic bags, portable hand scales, a razor blade box, and an apparatus used for cooling crack cocaine after it has been cooked. A loaded revolver was also found during the search, as well as a bag containing $2,203, $100 of which was identified as marked money that had been given to the confidential informant to purchase drugs.
Although the better policy is for the trial court to take curative measures, under the facts and circumstances of the present case, it is clear that the prosecutor's inadvertent comment did not alter the jury's verdict; thus, this remark, although improper, was harmless beyond a reasonable doubt.
 II.
The appellant argues that the trial court erred in allowing a State's witness, the confidential informant, to give testimony that he says was designed to bolster the informant's *Page 819 
own credibility, although the defense had not attacked his credibility. The appellant cites Gissendaner v. State, 54 Ala. App. 535,636, 310 So.2d 255 (1975) in support of his argument. See also Johnson v. State, 549 So.2d 636 (Ala.Cr.App. 1989). Although the appellant cites correct legal principle, that principle is not applicable to the facts in this case. In the present case, the record reveals that the witness's credibility had previously been attacked by the appellant during the cross-examination of an earlier witness. During cross-examination of Detective Drummond, the investigating officer, by defense counsel, the defense attempted to elicit testimony that the informant would not be paid if he did not bring back useful information to the officer; moreover, defense counsel questioned the officer on several occasions concerning the amount of money the informant was being paid. He further alluded to the fact that the witness's testimony was based solely on information that he gained from the confidential informant who, defense said "could have lied." Defense counsel also asked the witness if the informant had ever been convicted of a crime. " `There must be evidence which is impeaching in nature to permit a party to sustain his character.'" Lassiter v. State, 35 Ala. App. 323, 325,47 So.2d 230, 232, cert. denied, 254 Ala. 5, 47 So.2d 233 (1950), quoting Phillips v. Ashworth, 220 Ala. 237, 124 So. 519, 523. "Impeachment by proof of a witness' corrupt conduct in the case at hand authorizes the proponent of the witness to prove the witness' good general reputation in the community as to truthfulness or to offer the rehabilitation witness' opinion of the impeached witness' character for truthfulness." C. Gamble,McElroy's Alabama Evidence (5th ed. 1996), § 176.01(5). During the cross-examination of the investigating officer, defense counsel implied that the witness (confidential informant) was falsifying or fabricating evidence of the appellant's guilt in return for money. Defense counsel also attempted to impeach the witness by asking about his prior record. C. Gamble,McElroy's Alabama Evidence, (5th ed. 1996), § 176.01 (4).
According to Rule 608, Ala.R.Evid., opinion and reputation evidence of character is treated in Alabama as follows:
 "The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise."
The rehabilitation of an impeached witness by the admission of evidence of the witness' good character is further addressed in the advisory committee's notes following this rule:
 "Rule 608 (a) expressly provides that impeachment via evidence of reputation or opinion opens the door to the rehabilitation of the witness through positive evidence of reputation or opinion. Except for the admission of opinion evidence, this is consistent with the traditional practice in Alabama. See Bill Steber Chevrolet-Oldsmobile, Inc. v. Morgan, 429 So.2d 1013 (Ala. 1983) (impeachment via evidence of bad general reputation held to justify rehabilitation by evidence of good general reputation). Beyond this, however, Rule 608 (a) does not attempt to stipulate what forms of attack upon credibility will open the door for the calling party to rehabilitate the impeached witness by way of evidence of reputation or opinion for truthfulness. The phrase `or otherwise' in Rule 608 (a) is intended to leave much to the discretion of the trial judge. If that discretion is exercised consistent with traditional common law, it is reasonable to expect that generally rehabilitation via Rule 608 (a) will be allowed when it is clear that the witness's credibility has been attacked. This generally would be the case when there has been impeachment by evidence of reputation (or opinion) as authorized under Rule 608 (a), by evidence of convictions (Rule 609), or by evidence of inconsistent statements. See, e.g., Snead v. Jones, 169 Ala. 143, 53 So. 188 (1910) (evidence of conviction as authorizing rehabilitation); *Page 820 Dickson v. Dinsmore, 219 Ala.,. 353, 122 So. 437
(1929) (self-contradiction as authorizing rehabilitation); C. Gamble, McElroy's Alabama Evidence, § 176.01 (4th ed. 1991). As a general rule, only if a witness's bias is so strong as to imply corruption on the part of the witness will it authorize rehabilitation evidence under Rule 608 (a). See Gratton v. State, 455 So.2d 189 (Ala.Crim.App. 1984); Tilley v. State, 167 Ala. 107, 52 So. 732
(1910). . . . Other attacks upon credibility are to be treated on a case-by-case basis, in a manner consistent with the general rule stated above and with the trial court's discretion.
. . . .
 "The touchstone of rehabilitation, of course, is that no such evidence is admissible unless and until the principal witness's character for truthfulness has been attacked. The traditional Alabama rule likewise provides that a witness's credibility may be supported only after it first has been attacked. See Clark v. State, 56 Ala. App. 67, (318 So.2d 813
(1974), cert. quashed, 294 Ala. 493, 318 So.2d 822, cert. denied, 423 U.S. 937, 96 S.Ct. 298, 46 L.Ed.2d 270 (1975); Bill Steber Chevrolet-Oldsmobile, Inc. v. Morgan, 429 So.2d 1013 (Ala. 1983)."
Thus, in the present case, where the appellant attempted to impeach the witness through the testimony of the investigating officer before the witness's testimony, the State could properly rehabilitate the witness by presenting evidence of his good character for truthfulness and veracity.
 III.
The appellant argues that the trial court erred in denying his motion for a judgment of acquittal because, he says, the conviction was obtained on insufficient evidence to support the offense of distribution of controlled substances. Specifically, the appellant argues that the State failed to present any evidence connecting him with the controlled substance and only proved that the appellant was present at the scene of the offense.
However, the record indicates that the State presented sufficient evidence to support the conviction. The confidential informant testified that he purchased crack cocaine from the appellant on two separate occasions. An investigating officer testified that, upon executing a search warrant, he found the appellant in the bathroom where he had just flushed the toilet. He found razor blades in the bottom of the toilet bowl and he found a plate, plastic bags, drug scales, and a cooking utensil for cooling crack cocaine in a wastebasket behind that toilet. The officer also found $2,203, $100 of which were marked bills used by the confidential informant to make the drug purchase.
Pursuant to § 13A-12-211, Ala. Code 1975, "[a] person commits the crime of unlawful distribution of [a] controlled substance if, . . . he sells, furnishes, gives away, manufactures, delivers or distributes a controlled substance." The State proved a prima facie case of unlawful distribution of a controlled substance by the appellant.
 IV.
The appellant argues that the trial court erred in refusing to give his requested jury charge that stated that a jury should weigh "with greater care" the testimony of an informant who has been paid for his work as an informant. However, a review of the record indicates that the trial court properly refused this charge because it was not based on the evidence presented at trial, and because the basic law concerning credibility of witnesses and conflicting evidence or testimony was substantially and properly covered by the trial court's charge to the jury.Walters v. State, 585 So.2d 206, 210 (Ala.Cr.App. 1991). While there was evidence introduced at trial that the informant was paid to make the drug purchases, there was no evidence that he was paid to testify that he was receiving immunity from punishment in return for his testimony. Thus, the factual assertions in this requested charge were incorrect. Furthermore, the trial court thoroughly instructed the jury concerning its evaluation of the credibility of witnesses. Dill v. State,600 So.2d 343, 353 (Ala.Cr.App;1991). The trial court properly refused this requested charge by the appellant. *Page 821 
 V.
The State argues that this case should be remanded to the trial court for the imposition of an additional penalty pursuant to the Demand Reduction Assessment Act According to § 13A-12-281
(a), Ala. Code 1975, anyone convicted of violating one of the statutes enumerated in this subsection, is to be assessed an additional penalty of $1000 for first offenders and $2,000 for subsequent offenders. Section 13A-12-211, the offense of which the appellant was convicted, is included in this list. Moreover, the penalty in § 13A-12-281 (b), is in addition to, rather than in lieu of, any other fine or fines imposed. These provisions of the Demand Reduction Assessment Act are mandatoryPierson v. State, 677 So.2d 246 (Ala. 1995); Snell v. State,715 So.2d 920 (Ala.Cr.App 1998). Therefore, this cause is remanded to the trial court for imposition of the proper penalty under the Demand Reduction Assessment Act. A return should be filed with this Court no later than 35 days from the date of the release of this opinion.
OPINION OF DECEMBER 20, 1996 WITHDRAWN; OPINION SUBSTITUTED; APPLICATION GRANTED; RULE 39 (k) MOTION DENIED; REMANDED WITH INSTRUCTIONS.*
All judges concur.
* Note from the reporter of decisions: On October 2, 1998, on return to remand, the Court of Criminal Appeals affirmed, without opinion.
[1] The court reporter did not transcribe the opening statements of the parties, and the appellant's motion for a mistrial appears to have been made outside the court reporter's presence; it is not included in the record. However, the parties have stipulated as to the facts relevant to this issue.
[2] The confidential informant was originally instructed to go to this location to attempt to buy drugs from the appellant, because the investigating police officer knew it to be a place where the appellant "hangs out" and because it was owned by one of the appellant's relatives.